JOHNSON v. CHARLESTON AND SAVANNAH RY. CO.

1. RAILROADS—CONSTITUTION—NEGLIGENCE.—A CONTRACT whereby a railroad company beforehand seeks immunity from damages caused by its negligence, and that of its servants and agents, is not prohibited by sec. 15, art. IX., Con. 1895. *Justice Pope dissents.*

2. IBID.—COMMON CARRIER—NEGLIGENCE—DAMAGES—PUBLIC POLICY. —A CONTRACT whereby a common carrier undertakes to secure immunity beforehand from liability for damages for injuries resulting from its negligence, or that of its servants or agents, is contrary to public policy, and, therefore, void.

3. IBID—EMPLOYEE—DAMAGES—NEGLIGENCE — ESTOPPEL.—When an employee of a railroad company becomes a member of an association, and contributes thereto, whereby he is to receive a specified compensation and medical attention, in case of sickness or accident, and whereby he releases the company from suits for damages in case of accident or negligence, upon acceptance of the benefits thereof after the accident, he may elect, after accident, to accept or sue; and if he accepts the benefit of the association after the accident, and executes a release to the company for all liability therefor, he is estopped from suing, except in cases of fraud or duress. *Divided Court.*

4. PUBLIC POLICY—CONTRACT.—When one of the terms of a contract is void because contrary to public policy, does it necessarily follow that all other terms of the contract are void?

5. CONSTITUTION—PUBLIC POLICY.—The question upon which the Court is divided in this case is not a constitutional one, but whether

the transaction in question is void, because contrary to public policy?

6. IBID.—Where there are two questions in a case, one constitutional and the other not, and the other question is decisive of the case, the Court will not consider the constitutional question.

7. REHEARING refused.

Before WATTS, J., Charleston, December, 1897. Affirmed.

Action by Willis Johnson against Charleston and Savannah Railway Co. From judgment overruling demurrer to defendant's second affirmative defense, the plaintiff appeals.

*Mr. W. St. Julien Jervey,* for appellant, cites: *The contract is null and void as against public policy:* 20 S. C., 438; 17 Wall., 357; 32 N. Y., 337; 2 Rich., 286; 8 Fed. R., 782; 8 N. E. R., 467; 11 S. E. R., 829; 8 S. R., 776; 1 Kan., 226; Con. 1895, art. IX., sec. 15; 29 Kan., 169; 58 Am. R., 833; 43 Ark., 460. *A void contract is incapable of ratification:* 137 Ind., 655; 11 Wheat., 258; 114 Ind., 115; 65 Fed. R., 307.

*Messrs. Mordecai & Gadsden,* contra, cite: *The contract set up by defendant is not void because contrary to public policy:* 29 At. R., 854; 8 Ib., 206; 10 Ib., 237; 23 Ib., 307; 30 Ib., 492; 58 N. W. R., 1120; 61 Ib., 971; 62 Ib., 314; 70 Ib., 630; 71 Ib., 42; 37 N. E. R., 423; 45 Ib., 641; 48 Ib., 496; 35 Fed. R., 715; 36 Ib., 655; 41 Ib., 125; 71 Ib., 139, 136, 931; 76 Ib., 441; 8 N. E. R., 467.

The opinion herein was filed January 16, 1899, but upon petition for rehearing the remittitur was stayed until

May 9, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action for damages came on for trial before his Honor, Judge R. C. Watts. The hearing was confined to an oral demurrer to the second affirmative defense set up in the answer, which demurrer was overruled, and from the order of Judge Watts overruling the

same, an appeal is now presented to this Court. It will be proper, therefore, to reproduce the pleadings, to the end that our ruling may be properly understood.

The complaint of Willis Johnson against the Charleston and Savannah Railway Company, defendant herein, respectfully showeth: 1. That the defendant was at the time hereinafter mentioned and now is a corporation, duly created and existing under the laws of the State aforesaid. 2. That the plaintiff was, on or about the 16th day of November, in the year of our Lord 1896, in the employ of the defendant company as a fireman, and was there actively engaged at work on a train of said defendant company, running between Charleston and Savannah. 3. That while so engaged at Ridgeland, in the county of Beaufort and State aforesaid, as fireman on train proceeding from Savannah to Charleston, under charge and control of Robert Smart, engineer, it became the plaintiff's duty to stand upon a certain platform on which wood was piled, and from said platform to load the tender with fuel, by throwing sticks of wood therein. That after supplying the tender with wood as aforesaid, on a signal that the engine was about to move, the plaintiff stepped to the edge of the said platform and thence endeavored to step on to the engine. 4. That by reason of the broken and unsound condition of the said platform, which caused the fall of the plaintiff, and the sills on which it rested, the said platform gave way under the weight of the plaintiff, and forcibly precipitated him upon the iron structure of the engine. 5. That the broken and unsound condition of the said platform, which caused the fall of the plaintiff as aforesaid, was the result of the carelessness and negligence of the defendant in not keeping said platform in good, reasonable and safe repair. 6. That by reason of the fall aforesaid, the plaintiff sustained serious wounds and bruises in his arm, side and leg, and also injuries of an internal nature, causing him severe bodily pain and suffering, so that he is not able to perform his accustomed labor. That he has already expended a considerable amount of money for medicine and medical

attendance, and is advised by his physicians that his said injuries will probably disable him permanently from performing such labor as he was heretofore capable of performing, and will continue to cause him pain and require medical attention and medicine for the rest of his life.   7. That by reason of the carelessness and negligence of the defendant, as hereinbefore set forth, the plaintiff has been damaged $10,000.   Wherefore, the plaintiff demands judgment against the defendant for the sum of $10,000, and for the costs and disbursements of this action.

The defendant, the Charleston and Savannah Railway Company, answering the complaint herein, says: 1. This defendant admits the allegations contained in the first paragraph of said complaint.   2. This defendant denies the allegations contained in the second, third, fourth, fifth, sixth and seventh paragraphs of said complaint.   And by way of affirmative defense to said action, this defendant says: That the injury alleged in said complaint to have been received by the plaintiff, Willis Johnson, was caused by the contributory negligence of the said plaintiff, in not exercising due care and caution in stepping on said engine from said platform, and that but for said want of care, said injury would not have happened, such contributory negligence on the part of the plaintiff being the primary cause of said injury.   And by way of affirmative defense to said action, defendant alleges: That the said plaintiff at the time he claims to have received the alleged injury was a member of the Plant System Relief and Hospital Department.   That said Relief and Hospital Department is an organization formed by the Charleston and Savannah Railway, Savannah, Florida and Western Railway, Alabama Midland, Brunswick and Western, Florida Southern, and other railway companies (which said railway companies comprise the Plant system), for the purpose of establishing and managing a fund for the payment of definite amounts to employees contributing to the fund, who, under the regulations, are entitled thereto when they are disabled by accident or sickness, and to their families in the event of

death. The said relief fund is formed from contributions from the employees, and the Plant system, income derived from investments, and appropriations by the Plant system when necessary to make up a deficit. The regulations governing said Relief and Hospital Department require that those who participate in the benefits of the relief fund must be employees in the service of one of the railroad companies comprising said Plant system. This defendant further says that participation in the benefits of said relief fund is based upon the application of the beneficiary, and subject to all the rules and regulations of said relief and hospital department. Defendant further says that on the second day of November, 1896, the plaintiff herein being in the employ of the defendant company, and said company being a member of the Plant system, applied for membership in the said Plant System Relief and Hospital Department, and in said application agreed to be bound by all of the regulations of the relief and hospital department, and in said application further agreed that in consideration of the contributions of the said companies comprising the Plant system to the relief and hospital department, and of the guarantee by them of the payment of the benefits aforesaid, that the acceptance of the benefits from the said relief and hospital department for injury or death should operate as a release of all claims against said company and each of them for damages by reason of such injury or ·death. Defendant further says that when plaintiff received the alleged injury, he thereupon became entitled to the benefits coming out of his membership in said relief and hospital department by reason of the injury alleged to have been received by him while in said service. The said plaintiff thereupon immediately applied to said department for such benefits, and received therefrom payments amounting in all to the sum of $66.50, being the amount due for 133 days at the rate of fifty cents per day, which was the rate to which the plaintiff was entitled as a member of said relief and hospital department. This defendant further says that in accord-

ance with the regulations of said relief and hospital department, said plaintiff received free medical and surgical attendance from the surgeons of said company, and care and treatment in the said companies' hospitals free of charge, and the said relief and hospital department did all on its part to be done for and in behalf of the said plaintiff, by virtue of his membership in said department. The said sum of money the said plaintiff duly accepted and receipted for under the regulations of said relief and hospital department, and in accordance therewith, and the said plaintiff, in consideration of the payment to him of the said sums of money, thereupon duly released and forever discharged said defendant company, and each and every company comprising the Plant system, from all claims and demands for damages, indemnity or other form of compensation he then had, or might or could thereafter have, against any one of the aforesaid companies by reason of said injury, which said receipts and releases were severally signed and sealed and delivered to the said relief and hospital department by the said plaintiff. Wherefore, this defendant alleges that the acceptance of the said benefits from said relief and hospital department for said alleged injury, and the execution of the release aforesaid, operate to release and discharge said defendant company from any and all claims for damages arising in any way out of the injury complained of by said plaintiff in his said complaint.

The plaintiff demurs orally to the second affirmative defense set up in the answer, and moves that the same be dismissed, for the reason that it does not state facts sufficient to constitute a defense, in this, that in said defense it is alleged that the plaintiff had entered into a contract with the defendant whereby it was agreed upon certain considerations that the defendant should be released from all claims of the plaintiff for damages by reason of accidental injury or death; that such contract is contrary to law and against public policy, and a release thereunder cannot, therefore, be pleaded as a defense to an action for damages caused by the defendant's

negligence.   This demurrer was overruled.   And his Honor said: "There is no question in my mind that a contract of that kind, whereby a railroad company attempts to relieve itself of any liability on account of negligence, is contrary to public policy, and where the party enters into the contract beforehand, he would not be estopped from bringing his action for damages against the railroad company.   It seems in this case that the plaintiff had entered into that agreement, relieving the railroad company, before he was injured. After he was injured, he was put to his election as to whether he would sue the railroad company, or go ahead and carry out the contract and receive the benefits of that contract.   It seems to me that the decision in the case of Price against the railroad company would control in this case, and I think the plaintiff, having elected to receive the benefits under that contract, is now estopped from bringing his action against the railroad company, from suing the railroad company here for damages, and I overrule the demurrer."

Counsel for the plaintiff excepted to the ruling, and gave notice of intention to appeal.   I. Because his Honor erred in holding that the said second affirmative defense set up in the answer contained allegations of fact sufficient to constitute a defense.   II. Because his Honor erred in not holding that a contract, whereby a railroad corporation seeks immunity from damages caused by the negligence of itself or its servants, is null and void under the Constitution of the State. III. Because his Honor erred in not holding that such a contract is null and void because it is against public policy.   IV. Because his Honor erred in holding that such a contract may properly be placed as a defense in an action brought by an employee against a railroad company for damages caused by said company or its servants.   V. Because his Honor erred in holding that even if such a contract were void, the receiving of money or other consideration thereunder, after the receipt of the injury, was such an act as would bar recovery of damages.

It is apparent from the text of Judge Watts' decision, that

he held that the contract entered into by and between the plaintiff and the defendant, as a member of the Plant system, was void as against public policy, and from this decision of Judge Watts there is no appeal, and hence it is the law of this case. However, the Circuit Judge, as he thought under the decision of this Court in the case of *Price* v. *R. R. Co.*, 33 S. C., 556, held that the subsequent receipt of Johnson to the defendant company would estop Johnson from bringing this action. We fear the case of *Price* v. *R. R. Co., supra,* has been given a force that it was not intended that decision to possess. In the case cited, Price, while an employee of the railroad company, was injured in February, 1887, by the alleged negligence of the railroad company, and on the fifth day of August of the same year (1887), executed a release to said company for a valuable consideration, whereby he discharged such company from any claim, demand or liability for payment of any other or further sum or sums of money, for or on account of his injury while in their service. Price died on the        day of November, 1887. His wife, as the administratrix of his estate, brought an action against the railway company for damages under what is known as the Lord Campbell Act. On trial, the defendant railway company offered to prove under the plea in its answer that Price, the intestate, had in his lifetime released any right of action for a valuable consideration for his injury by the railroad company. The Circuit Judge denied the proof, whereupon the railroad company appealed to this Court, and it was here decided that the Circuit Judge was in error, because the right of action under Lord Campbell's Act (sections 2183 to 2186 of General Statutes) was first in the party injured, which right of action survived his death to his administrator, and that as Price was competent to deal with his right of action in his lifetime, and had settled with the railroad company, therefore, such settlement would estop his administratrix, unless the receipt was executed under fraud or duress. There was no allegation there that the contract not to sue was against a sound public

policy, or that the receipt Price executed was in accordance with and as a part of such illegal contract. So we do not think the case of *Price* v. *R. R. Co.* is decisive of this case. We have never had a case in our Courts before where this question was considered. There have been such in other Courts of this country, where the decisions have been different—some upholding the receipt and, indeed, the contract as binding, as for example: In the State of Pennsylvania, in the case of *Johnson* v. *Philadelphia R. R. Co.,* 29 Atl. Rep., 854; *Graft v. Baltimore and Ohio R. R. Co.,* 8 Atl., Rep., 206; *Fuller* v. *Baltimore and Ohio Employee's Relief Association,* 10 Atl. Rep., 237; also, in the State of Maryland, see *Spitze* v. *B. & O. R. R. Co.,* 23 Atl. Rep., 307; also, in the State of Nebraska, see *Donald* v. *Chicago, B. & Q. R. R. Co.,* 61 N. West., 971; also, State of Iowa, see *Chicago, B. & Q. R. R. Co.* v. *Bell,* 62 N. W., 314; also, in the State of Indiana, see *Pittsburg, C. & C. St. L. Ry. Co.* v. *Cox,* 45 N. E., 641; also in Ohio, *Eckman* v. *Chicago B. & Q. R. Co.,* 48 N. E., 496; also, in Illinois, see *Owens* v. *B. & O. R. Co.,* 35 Fed. Rep., 715; also, the State of West Virginia—the only case where the Court has refused to sustain the question is that of *Miller* v. *C. B. & Q. R. Co.,* 65 Fed. Rep., 305, and s. c., 76 Fed. Rep., 439. It seems to us that, when analyzed, the proposition of the defendant railway company is as to either or both of these matters: first, a party can contract to relieve a railway company from the negligence of such railway company; or second, a party not being able to contract with a railway company as against its negligence, yet by the acceptance of a benefit under such contract, may be estopped thereby from suing the railway company for its negligence. As to the first position, we say unhesitatingly that our decisions uniformly hold that one cannot make a valid contract to free a railway company from negligence. *Swindler* v. *Haillard and Brooks,* 2 Rich., 286; *Baker* v. *Brinson,* 9 Rich., 202; *Wallingford and Russell* v. *Railroad Co.,* 26 S. C., 258. But apart from our decisions, the new Constitution of this State,

adopted in the year 1895, in article IX., sec. 15, provides: "Every employee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of said corporation, or its employees, as are allowed by law to other persons, not employees, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow-servant on another train of cars, or one engaged about a different piece of work. * * * *Any contract or agreement, expressed or implied, made by any employee to waive the benefit of this section, shall be null and void*, and this section shall not be construed to deprive any employee of a corporation, or his legal or personal representative, of any remedy or right that he now has by the law of the land" (italics ours). One of the results of this provision of the Constitution is that the employees of a railway corporation are placed upon the same plane with all other persons in any case of injury which results from negligence of such railway company. This being so, no contract by which an employee binds himself to forego an action, by reason of negligence, against a railway company, is valid. It is not only against public policy, but is forbidden by the Constitution.

Now as to the *second point*. It seems to us that the language in the last part of section 15, article IX., of our Constitution, forbids any agreement by an employee to waive the benefits of this section. But if this were not so, still, as the original contract to release the railway from the liability for its negligence was void, any attempt by this employee to ratify such void contract is a nullity. It is needless to prolong this discussion or to cite the numerous authorities bearing on this matter. 28 A. & E. Enc., 473, puts the doctrine thus: "A void act, as defined in the later cases and by approved authorities, is one which is entirely null, not binding

11—55

on either party, and not susceptible of *ratification*" (italics ours). We will not undertake to enlarge upon the plans of the Plant system as to this protective association. It has some admirable points, but is fatally defective in others.

My opinion is that the judgment of this Court should be reversed, but inasmuch as the Justices are evenly divided in opinion, under our Constitution, the judgment of the Circuit Court stands affirmed.

MR. JUSTICE GARY. I *concur* in the conclusion announced in the opinion of Mr. Justice Pope, as it seems to me the allegations of the second affirmative defense show a scheme on the part of the defendant to avoid its liability for negligence, and that it is, therefore, against public policy, null and void. The unlawful scheme even extended to the acceptance of the benefits thereunder, and such acceptance is also against public policy.

MR. JUSTICE JONES *concurs* in the dissenting opinion of Mr. Chief Justice McIver.

MR. CHIEF JUSTICE McIVER *dissenting*. Being unable to concur in the conclusion reached by Mr. Justice Pope, I purpose to state the grounds of my dissent. All the material facts are so fully set forth in the leading opinion that it will be unnecessary to repeat them here in detail. The sole question presented for the decision of the Circuit Judge was whether the demurrer to the second affirmative defense, based upon the ground that the facts stated therein were not sufficient to constitute a defense, should be sustained; and he having held that the demurrer could not be sustained, the question presented for the decision of this Court is whether such ruling was erroneous in one or more of the several particulars pointed out by the exceptions. The first exception is manifestly too general to require further notice, under the well settled practice. The third and fourth exceptions are taken under a misconception of the ruling of the Circuit Judge; for, so far from not holding that a contract whereby

a railroad corporation "seeks immunity from damages caused by the negligence of itself or its servants," is null and void because against public policy, he expressly so held; and so far from holding that "such a contract" could be pleaded "as a defense to an action brought by an employee against a railroad company caused by [the negligence of] the said company or its servants" [the words which I have inserted in brackets being obviously inadvertently omitted] he, in terms, so held.    This is manifest from the language used in the first sentence of the remarks made by the Circuit Judge in overruling the demurrer.    These two exceptions may, therefore, be dismissed from further consideration.    So, also, the fifth exception does not exactly represent the ruling of the Circuit Judge; but, as by a liberal construction (which I am disposed to give it), this exception may be regarded as sufficient to raise the question whether there was error in ruling that, after the injury was sustained, the plaintiff was put to his election, whether he would sue the company for damages or accept the benefits of the arrangement set forth in the second affirmative defense, and these having been accepted by the plaintiff, he was estopped from suing the company; and I am quite willing so to consider that exception. So that, according to a strict practice, the only questions necessary for this Court to consider is, whether the second and fifth exceptions can be sustained.

The second exception presents the question, whether there is any provision in the present Constitution declaring that "A contract whereby a railroad corporation seeks immunity from damages caused by the negligence of itself or its servants, is null and void."    Waiving the objection, which might be raised, that there is nothing in the record showing that such question was presented to or considered by the Circuit Judge, as I prefer to consider the question on its merits, disembarrassed by any technical objection or rule of practice, I propose to so consider it.  The only provision which is relied upon is that contained in section 15 of article IX. of the present Constitution, which

reads as follows: "Every employee of any railroad corporation shall have the same rights and remedies for any injuries suffered by him from the acts or omissions of said corporation, or its employees, as are allowed by law to other persons not employees, when the injury results from the negligence of a superior agent or officer, or of a person having the right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow-servant on another train of cars, or one engaged about a different piece of work. Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines, voluntarily operated by them. When death ensues from any injury to employees, the legal or personal representatives of the person injured shall have the same rights and remedies as are allowed by law to such representatives of other persons. Any contract or agreement, expressed or implied, made by any employee to waive the benefit of this section, shall be null and void; and this section shall not be construed to deprive any employee of a corporation, or his legal or personal representative, of any remedy or right that he now has by the law of the land. The General Assembly may extend the remedies herein provided for to any other class of employees." It seems to me very obvious that the main purpose of this provision of the Constitution was to make material, and, as I think, wise and proper changes in the long established rule whereby an employer, when sued for damages for injuries sustained by one of his employees, could exempt himself from liability by showing that the injuries complained of by the employee resulted from the negligence of one of his *fellow-servants,* and to settle finally the doctrine, as to which there had been some conflict of authority, that the fact that an employee (except a conductor or engineer in charge of dangerous or unsafe

cars or engines voluntarily operated by them) knew that the machinery or other appliance by which he was injured was defective or unsafe, would constitute no defense to an action for damages, brought by such employee; and finally, to declare that any contract or agreement, either express or implied, by which any employee undertakes to *waive the benefits of this section,* shall be null and void. Now, what are the benefits secured by this section to the employee of a railroad corporation? 1st. Putting the employee on the same footing as other persons, *not employees,* so far as his rights and remedies for injuries sustained under the circumstances mentioned in the section are concerned. 2d. Declaring that the fact that the employee knew of the defective or unsafe condition of the machinery or other appliances which caused the injury, should constitute no defense to an action for damages sustained by such injury. 3d. Giving to the representatives of any employee killed on the railroad the same rights and remedies as the representatives of any other person, not an employee, who may be killed by the railroad company, would have. 4th. Declaring any contract to waive *the benefits of this section* to be null and void. 5th. Declaring that this section shall not be so construed as to deprive any employee of a corporation of any right that he now has by the law of the land. 6th. Authorizing the General Assembly to extend the remedies therein provided for to any other class of employees. From this analysis of the provisions of the section, it seems to me very clear that it has no application whatever to this case. The affirmative defense here set up is not based upon any contract or agreement to waive any of the benefits secured by the section of the Constitution above analyzed. The constitutional provision now under consideration does not even purport to declare that a railroad corporation cannot, by contract, exempt itself from liabilities for damages sustained by reason of its own negligence, or that of its servants or agents, for the very obvious reason that such a declaration would have been wholly unnecessary, as that was the law at the time of the adoption of

the Constitution, well settled by authority and fully sustained by sound reason, and undisputed by any one. The sole object of the constitutional provision was to confer upon the employees of railroad corporations certain benefits, therein specifically stated, which they either had not previously enjoyed, or their right to which was a matter of question; and to secure to such employees the full enjoyment of such benefits, it was further provided that any contract to waive any of *such benefits* "shall be null and void." I am, therefore, unable to perceive that sec. 15 of art. IX. of the present Constitution has any application to this case, and hence I think the second exception should be overruled.

Proceeding, then, to the consideration of the fifth exception. This exception, as it seems to me, is based upon the assumption that the contract or arrangement set out in the second affirmative defense is void, because against public policy. Whether this assumption is well founded is an important and interesting inquiry, of novel impression in this State at least. But before proceeding to this inquiry, I desire to notice a mistake into which, I submit with deference, Mr. Justice Pope has fallen. He says (and in justice to him I quote his language) : "It is apparent from the text of Judge Watts' decision that he held that the contract entered into by and between the plaintiff and defendant, as a member of the Plant system, was void as against public policy; and from this decision of Judge Watts there is no appeal, and hence it is the law of this case." In the first place, it is, at least, doubtful whether the Circuit Judge so construed the contract set up in the affirmative defense. His language, following immediately after the statement of the grounds of the demurrer, should be construed in connection with that statement. He says: "There is no question in my mind that a contract of that kind (meaning a contract of the kind mentioned in such statement), whereby a railroad company attempts to relieve itself of any liabilty on account of negligence, is contrary to public policy, and where the party enters into the contract beforehand, he

would not be estopped from bringing his action for damages against the railroad company." But he nowhere says that he regarded the contract set up in the affirmative defense as void. It is true, that he does say, immediately after the language just quoted, that "It seems in this case that the plaintiff had entered into that agreement, relieving the railroad company before he was injured;" and he then proceeds to hold that after the plaintiff was injured, he was put to his election whether he would sue the company or carry out the contract by receiving the benefits thereof; and that having elected to receive the benefits of the contract, he was estopped from suing for damages. His idea seems to have been that, *even if the contract was void,* the plaintiff by receiving its benefits had estopped himself from suing. This, judging from the language used in the exception, seems to have been the view taken by appellant's counsel, for the error imputed to the Circuit Judge by the fifth exception is: "in holding that, *even if such a contract were void,* the receiving of money or other consideration thereunder, after the receipt of the injury, was such an act as would bar the recovery of damages." But, in the second place, even if it be assumed that the Circuit Judge did consider the contract or arrangement set out in the affirmative defense void as against public policy, and gave as his reason for the judgment which he pronounced, that, notwithstanding such contract was void, yet the plaintiff, by accepting its benefits, after the injury was sustained, had estopped himself from bringing this action, I do not think this Court would be thereby precluded from considering and determining the two questions: 1st. Whether the contract or arrangements set up as a bar to the action was in fact contrary to public policy, and therefore void. 2d. If so, whether the acceptance of the benefits of such contract or arrangements, after the injury was sustained, estopped the plaintiff from bringing this action. As I understand it, the appeal is *from the judgment* rendered by the Circuit Court, and *not* from the reasons given by the Circuit Judge for such judgment. The question, therefore,

is, whether any *error in the judgment* has been pointed out
by the exceptions, and not whether the reasons given for
such judgment are well-founded; for, as has been frequently
said, a judgment may be affirmed, though the reasons given
for it by the Circuit Judge may not be sound. If, therefore,
the Circuit Judge can properly be regarded as having con-
sidered the contract set up in the affirmative defense as con-
trary to public policy, and, therefore, void, the defendant
could not appeal from that, as the judgment was in its favor;
and the defendant company having obtained the judgment
of the Circuit Court, it matters little to the company what
may have been the grounds upon which such judgment was
based. It seems to me, therefore, that this Court, not only
may, but should, consider the important and interesting
question, whether such contract is contrary to public policy,
and, therefore, void. This question, while new in this
State, has been considered and determined in at least eight of
our sister States, and by the Federal Courts in at least four
of the Circuits. In every case which has been brought to
my attention, except one, contracts similar to that now under
consideration have been upheld, as not contrary to public
policy and not void. Even in the case mentioned as an
exception—*Miller* v. *C., B. & Q. R. R. Co.,* 65 Fed. Rep.,
304—it seems that when the case was carried up by appeal,
the appellate tribunal, while affirming the judgment, did not
do so upon the ground that the contract was contrary to pub-
lic policy, and, therefore, void, but upon the ground of defect
in the plea setting up the contract as a defense. Indeed, the
appellate tribunal seems to have recognized the authority of
the numerous cases holding that such contract was not void
as against public policy. Many of these cases having been
mentioned in the opinion of Mr. Justice Pope, need not be
cited here. While it is quite true that these cases are not
binding authority on this Court, and are only useful as
showing the trend of the judicial mind, and mainly valuable
for the strength of the reasoning employed therein, yet when
such unusual and striking unanimity is found in the various

Courts and various jurisdictions in which this question has been considered, it is well calculated to incite this Court, when called upon for the first time to determine this question, to the most careful consideration of the reasoning by which such a practically unanimous result has been reached. I propose, therefore, to consider with care this question, aided largely by the light which has been thrown upon it by the various Judges who have been called upon to determine the question. In the outset, I desire to say, what would seem to be needless, but for the fact that it appears to have been thought necessary to expend much time and labor upon the point, that I do not suppose any one doubts that a contract whereby a railroad corporation, or any other common carrier, undertakes to secure immunity from liability for damages for injuries resulting from the negligence of the carrier, or any of his servants or agents, is contrary to public policy, and, therefore, void. But the question here is whether the contract or arrangements set up in the affirmative defense is a contract for immunity from damages. I do not think it can be so regarded; for, on the contrary, the very terms of the contract necessarily assume that the defendant is liable; and the whole scope and effect of the contract is to fix the measure of such liability and the manner in which such liability shall be satisfied. As is well said in one of the cases cited—*Johnson* v. *Railroad Co.,* 163 Pa. St., 127: "He (referring to the plaintiff) is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby." How such a contract can be construed to be a contract whereby the carrier seeks to obtain *immunity* from liability for damages sustained by reason of its own negligence, or that of its servants or agents, it is impossible for me to conceive. Let us examine in detail the terms of the contract or arrangement as set out in the affirmative defense, and see whether such terms do not fully justify what I have said as to its scope and effects. It seems that the defendant company is one of several railway companies

constituting what is called the Plant system, in which there is an organization called the Relief and Hospital Department, established for the purpose of raising a fund for the payment of specified amounts to any employee contributing to the fund, when he is disabled by accident or sickness, and to his family in the event of his death.    This fund is raised by stated contributions from the employees, from the Plant system, from income that may be derived from investments of the fund, and from appropriations made by the Plant system when necessary to make up a deficit in the fund.    It is alleged in the affirmative defense that the plaintiff applied for membership in the said Relief and Hospital Department, and in his application agreed to be bound by all of the regulations of said department, and further agreed that, in consideration of the contributions from the companies composing the Plant system to said fund, and of the guaranty by them of the payment of the benefits aforesaid, the acceptance of such benefits should release the said companies and each of them from all claims for damages sustained by reason of any injury that such employee might sustain.    It is further alleged, that as soon as the plaintiff sustained the injury complained of in this case. he immediately applied for and obtained from the said Relief and Hospital Department all the benefits to which he was entitled under the regulations of such department, as well in money as in surgical and medical services, care and treatment in the hospital, free of any charge therefor; and that the plaintiff, in consideration thereof, duly executed, under his hand and seal, receipts therefor, and a release of all claims for damages or other form of compensation which he might have against the defendant company.    From this statement of the nature and terms of the contract or arrangement in question, which substantially covers the allegations made in the second affirmative defense, to which alone the demurrer was directed, which allegations must, in considering the demurrer, be accepted as true, I do not see how it is possible to regard such contracts as a contract exempting the defendant company

from liability for damages sustained by reason of the negligence of the defendant company, or that of its servants or agents.    By entering into this contract, evidenced by his becoming a member of the Relief and Hospital Department, the plaintiff did not waive or release any right of action which he might hereafter have against the defendant company, but his contract was that, *if after receiving any injury* at the hands of the company, he accepted the benefits which he would be entitled to claim by virtue of his membership of such department, *such acceptance* should operate as a release of any right of action which he might otherwise have against the company.    So that by the terms of the arrangement, the plaintiff, *after he sustained the injury,* had his election either to accept the benefits which, as a member of the Relief and Hospital Department, he would be entitled to claim, or to decline to receive such benefits.    *If he accepted,* he was then bound to release the company; but *if he declined,* he was not bound to release the company, but retained his right of action just as if he had never become a member of the Relief and Hospital Department.    If it should be said that this seems to be a one-sided arrangement, as the plaintiff, if he declined to accept the benefits, would lose the amount which he had contributed to the Relief and Hospital Department fund, this seeming one-sidedness disappears when it is considered that by the terms of the arrangements, the plaintiff would be entitled to the benefits of the fund and to medical or surgical services, and to care and treatment in the hospital, free of any charges therefor, even if his disability arose from sickness from natural causes or from injuries for which the railroad company could not be held responsible. Furthermore, inasmuch as the plaintiff had the right of election, *after the injury was sustained,* either to sue for damages or to claim the benefits of the Relief and Hospital Department, he could, if the injury was slight, accept the benefits of the Relief and Hospital Department as satisfactory compensation for the injury, but if the injury was serious, calling for greater compensation than would be afforded by

the benefits which he might claim, he could exercise his right
to sue for damages; so that it seems to me that the arrange-
ments, properly understood, would be favorable, rather than
detrimental, to the interests of the employee.    But, however
this may be, such an arrangement, certainly, cannot be re-
garded as a contract whereby the carrier undertook to secure
immunity from liability for injuries sustained by his em-
ployee, resulting from his own negligence, or that of his
servants or agents.    As was well said in the case above
cited, and referred to with approval in another subsequent
case in Pennsylvania—*Ringle* v. *Pennsylvania R. R. Co.,* 30
Atl. Rep., 492—"It is not the signing of the contract (or be-
coming a member of the Relief and Hospital Department),
but the acceptance of benefits after the accident, that consti-
tuted the release.    The injured party, therefore, is not stip-
ulating for the future, but settling for the past.    He is not
agreeing to exempt the company from liability for negli-
gence, but accepting compensation for an injury already
caused thereby. * * * The substantial feature of the con-
tract, which distinguishes it from those held void as against
public policy, is that the party retains whatever right of
action he may have until after knowledge of all the facts,
and an opportunity to make his choice between the sure ben-
efits of the association (department) or the chances of liti-
gation.    Having accepted the former, he cannot justly ask
the latter, in addition."    It was claimed by counsel for
appellant in his argument, that under the rules and regula-
tions of the defendant company, the plaintiff was required,
when he entered the service of such company, to become a
member of the said Relief and Hospital Department, but as
that fact does not appear in the "Case" as prepared for argu-
ment here, it cannot under the well settled rule be considered.
But I may say, that under my view of the case, such fact,
even if it did appear, would make no difference.    As I
understand it, every person who enters the employment of
another agrees, either expressly or impliedly, to conform to
the regulations of the employer for the control and man-

agement of his employees; and if he is not willing to conform to such regulations, he is at perfect liberty to decline entering the service of such employer.   So here, when the plaintiff entered the service of the defendant company, he did so voluntarily, as he was under no compulsion to do so, and might have entered the service of some other company, which had no such rules and regulations, or might have engaged in some other employment.   But when he entered the service of the defendant company, he, like all other employees, signified his willingness to conform to its regulations, and he, therefore, cannot properly be said to have been compelled to enter into the contract or arrangement in question.   But even if the contract in question could be regarded as contrary to public policy, and, therefore, void, in the eye of the law, the case stands as if no such contract had ever been executed.   If the contract was an absolute nullity, then it is as though no such contract was ever made.   If so, then the allegation distinctly made in the second affirmative defense, that the plaintiff, after sustaining the injury complained of, for valuable consideration, under his hand and seal, released the defendant company from all liability for such injury, was certainly sufficient to constitute a defense to the action, and for that reason, if no other, the demurrer was properly overruled.   For that would be precisely in accordance with the principle established in the case of *Price* v. *R. R. Co.,* 33 S. C., 556.   It seems to be supposed that the case just cited has been misunderstood, and that it has no application to this case.   Let us see.   That was a case in which Price, a conductor of a freight train, was seriously injured on the 18th of February, 1887, while in the performance of his duties as such, from the effects of which he died the month of November following.   On the 8th of August, 1887, after the injury was sustained, but before his death, he executed a release for valuable consideration of his right of action against the railroad company.   Subsequently, to wit: in August, 1888, an action was commenced against the railroad company by the administratrix of Price, to recover

damage under the statute—Lord Campbell Act. On the trial, the defendant company offered to put the release in evidence as a bar to the action, which was ruled inadmissable. Upon appeal, it was held that the release was competent, and that its effect was to bar the plaintiff's right of action, unless it is made to appear that such release was obtained by fraud or duress. It is very clear that the Court, in that case, considered and determined the very question presented here; for in the opinion of the Court we find this language: "We think the leading and controlling question in the case is as to the admissability *and effect of the* release above mentioned" (italics mine). And after showing that the capacity of the deceased to maintain the action is made the test of the right of the administratrix to maintain the action provided for by statute, the Court proceeds to use this language: "It cannot be doubted that if the deceased had not died, and such release had been pleaded and proved in an action instituted by him to recover damages for the injury alleged to have been done him by the wrongful act of the defendant, it would have been a bar to such action, unless it had been made to appear that such release was obtained by fraud or duress." That case, therefore, certainly does decide that such a release, in the absence of fraud or duress, of which there is not and cannot be any pretense in this case as now presented, would bar the plaintiff's right of action. It may be that as in Price's case (38 S. C., 199), when this case comes to trial upon its merits, the plaintiff will be able to show that the release set up as a bar to the right of action was obtained by fraud or imposition; but that is a matter which we cannot consider now, when the question is simply as to the efficiency of the pleading.

It is contended, however, that the release relied on as a bar to the action is but a part of the contract claimed to be void because contrary to public policy, and hence must fall with it. In the first place, as I have endeavored to show, I do not think any part of the contract is contrary to public policy, but conceding for the sake of argument that

it is; in the second place, I do not think the act of giving the release entered into or formed any part of the contract. The terms of the contract as set out in the second affirmative defense, are that the plaintiff "agreed that, in consideration of the contributions of the said companies comprising the Plant system to the Relief and Hospital Department, and of the guarantee by them of the payment of the benefits aforesaid, that *the acceptance of the benefits from the said Relief and Hospital Department for injury or death shall operate as a release of all claims against said company,* and each of them, for damages by reason of such injury or death" (italics mine); and I am unable to discover anything in the contract which contemplates or requires any formal release, such as is alleged to have been executed by the plaintiff. On the contrary, if, as we have seen by the terms of the contract, the acceptance were to "operate as a release," there would and could be no necessity for the execution of a formal release. Hence, when the plaintiff did, as alleged, execute a formal release, he was not acting in pursuance of the contract, or carrying out any of its terms, but it was his own voluntary act, independent of the alleged void contract, which must operate as a bar to the action as declared in Price's case. Besides, I am not now prepared to assent to the proposition that, because one of the terms of a contract is contrary to public policy, and, therefore, void, it *necessarily* follows that all the other terms of such contract must likewise be declared void. But as it would extend this opinion to an unreasonable length to enter into any discussion of that proposition, and as I do not deem it necessary to do so in this case, under the views which I have taken, I do not propose to discuss that proposition, or to express any definite opinion with reference to it.

It seems to me, therefore, that under any view that may, properly, be taken of this case, there was no error in the judgment overruling the demurrer, and hence such judgment should be affirmed.

In regard to the petition for rehearing, the following opinion was filed:

PER CURIAM.    This case was heard at the April term, 1898, of this Court, and the members of the Court being equally divided, as appears by the opinions filed on the 16th of January, 1899, the judgment of the Circuit Court stood affirmed, by virtue of the provisions of the Constitution to that effect.    On the 26th day of January, and on the 1st day of February, 1899, the appellant filed petitions for a rehearing, which are now before us for consideration.    The petitions are based upon the sole ground that there was a constitutional question involved in the case, and as the entire Court was not agreed as to the proper determination of that question, this Court was bound, under the provisions of sec. 12 of art. V. of the Constitution, to call to its assistance all of the Judges of the Circuit Court, except the Judge who presided at the Circuit Court when the judgment appealed from was rendered, and the rehearing is asked for, for the purpose of having the Circuit Judges called to the assistance of this Court to hear and determine said constitutional question.    In the first place, the "Case" as prepared for argument here does not show that any constitutional question was either presented to or considered by the Circuit Judge who rendered the judgment appealed from.    On the contrary, it does show that the question below arose upon a demurrer to the second affirmative defense set up in the answer, and was based, solely, upon the ground "that, in said defense, it is alleged that the plaintiff had entered into a contract with the defendant, whereby it was agreed, upon certain consideration, that the defendant should be released from all claims of the plaintiff for damages by reason of accidental injury or death; that such contract is contrary to law and against public policy, and a release thereunder cannot, therefore, be pleaded as a defense to an action for damages caused by the defendant's negligence."    And in the order overruling the demurrer, the Circuit Judge, while holding that a contract, whereby a railroad

company attempts to relieve itself of any liability on account of negligence, is contrary to public policy, and where a party enters into such a contract before the injury was sustained, he would not be estopped from bringing his action for damages; but where, as in this case, the party injured, *after the injury was sustained,* elected to receive compensation for such injury, as provided for by such contract, he is estopped from bringing his action for damages. He, therefore, rendered judgment overruling the demurrer. From this judgment plaintiff appealed, and, for the first time, so far as the record before us shows, by his second exception distinctly raised the constitutional question in these words: "Because his Honor erred in not holding that a contract, whereby a railroad corporation seeks immunity from damages caused by the negligence of itself or its servants, is null and void under the Constitution of the State." Inasmuch as the Supreme Court is a tribunal whose duty it is to review the action of the Circuit Court, and in a law case correct any errors of law therein which are pointed out by the exceptions, this Court has uniformly held that the appellant has no right to have any question (except a question of jurisdiction) considered by this Court, unless it appears by the record as prepared for argument here, that such question has been presented to or considered by the Circuit Judge. It is true, as set forth in the petitions for a rehearing, that counsel for respondent, in his argument before this Court, does say: "Counsel for the plaintiff, in his argument of this case on Circuit, cited sec. 15 of art. 9 of the Constitution of 1895, as setting forth the public policy of this State in reference to contracts by employees." But counsel for respondent also says: "A careful consideration of this section will disclose the fact that its sole purpose and effect is to limit the defense of the negligence of a fellow-servant;" and he adds: *"Counsel for the plaintiff in his argument also seemed to admit this to be the proper construction of the section."* We also observe that, in the printed argument of counsel for appellant on file in this case, he seems to refer to the constitutional

12—55

provision above cited, only for the purpose of showing that the general and well settled doctrine that a railroad company cannot, by contract, exempt itself from liability for damages resulting from injuries sustained by reason of its negligence, because such a contract is against public policy, and, therefore, void, has received the sanction of the organic law of this State. It is easy, therefore, to understand why the Circuit Judge should not have considered the constitutional question in rendering his judgment in this case. But aside from this, it has been invariably held that this Court will consider no fact appearing only in the argument of counsel, but will confine itself to what appears in the record as prepared for argument here, unless the same is amended either by consent or other proper mode. We must hold, therefore, that no constitutional question is properly involved in this case. It is true that, in the opinion of Mr. Justice Pope, he does refer to the constitutional provision above cited as an additional reason for the conclusion which he reaches; but he, manifestly, bases his conclusion mainly upon the ground that the contract set up in the second affirmative defense, to which the demurrer was directed, was void as contrary to public policy; and Mr. Justice Gary, in his special concurrence, unquestionably bases his concurrence solely upon the ground of public policy, while the other two Justices hold that the constitutional provision has no application to this case. This being the case, it is manifest that the question upon which the Court was equally divided was, *not* the constitutional question but the question as to public policy. Now, the rule in the Supreme Court of the United States is well settled that, where the case presents two questions, one of which is a Federal question and the other is not, if the view taken by the Court below of the latter question is decisive of the case, the Supreme Court of the United States will not take jurisdiction of the case, although there is also a Federal question in the case. By analogy, this rule may well be applied to the present case, as the conclusion reached by the several Justices manifestly

turned upon the question as to public policy, which is not a constitutional question. We are of opinion, therefore, that no constitutional question can, properly, be said to be involved in this case, and that there is no ground for a rehearing.

It is, therefore, ordered, that the petition for a rehearing be dismissed, and that the stay of the remittitur heretofore granted be revoked.