498 S.E.2d 674

Randy W. WILSON, Respondent,

v.

BUILDERS TRANSPORT, INC., Appellant.

Tammy McBee WILSON, Respondent,

v.

BUILDERS TRANSPORT, INC., Appellant.

No. 2796.

Court of Appeals of South Carolina.

Heard Dec. 2, 1997.

Decided Feb. 23, 1998.

Rehearing Denied April 23, 1998.

288

Mark S. Barrow and William R. Calhoun, Jr., Sweeny, Wingate, Murphy & Barrow, Columbia, for appellant.

J. Mark Hayes, II, of Harrison & Hayes, Spartanburg, for respondents.

HOWELL, Chief Judge:

Randy Wilson brought a negligence action and his wife, Tammy Wilson, brought a loss of consortium action against Builders Transport, Inc. (Builders), Randy's employer. Following summary judgment motions by the Wilsons and Builders, the trial court struck several of Builders's defenses. Builders appeals. We reverse and remand.

## I.

On October 7, 1993, Builders instructed Randy to pick up a load of lumber in Thomasville, North Carolina, and to deliver it via the shortest practical route to Pounding Mill, Virginia, a trip measuring 172 miles. After leaving Thomasville, instead

of traveling directly to Virginia, Randy drove south to Spartanburg, South Carolina, to spend the night in his own home. The next morning Randy left Spartanburg and headed to Pounding Mill, a distance of 343 miles. While en route to Virginia, Randy was involved in an accident in Tennessee. Had Wilson proceeded directly to Virginia from North Carolina, he would never have crossed the Tennessee border.

Previously, in June 1993, Builders exercised its statutory right to opt out of the Workers' Compensation scheme, and instituted its own Occupational Benefits Plan (Plan). Builders presented all its employees, including Randy, with a form entitled "ELECTION TO PARTICIPATE IN THE OCCU-PATIONAL BENEFITS PROGRAM OF BUILDERS TRANSPORT, INC." The election form read in pertinent part:

> By execution of this document, I hereby voluntarily elect to participate in the Occupational Benefit Program of Builders Transport, Inc. (the "Plan"). AS REQUIRED BY THE TERMS OF THE PLAN, I, THE UNDERSIGNED, HEREBY, FREELY, IRREVOCABLY AND UNCONDITIONALLY RELEASE, WAIVE, AND AGREE NOT TO SUE UPON, ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER NOW EXISTING OR ARISING IN THE FUTURE, THAT I MAY HAVE AGAINST AGENTS AND EMPLOYEES, THAT ARISE OUT OF OR ARE RELATED TO INJURIES OR DEATH SUSTAINED BY ME IN THE COURSE AND SCOPE OF MY EMPLOYMENT BY BUILDERS TRANSPORT, INC....
>
> I UNDERSTAND THAT BY EXECUTION OF THIS DOCUMENT, I WILL LOSE THE RIGHT TO SUE BUILDERS TRANSPORT, INC. AND PEOPLE EMPLOYED BY IT IN CONNECTION WITH INJURIES OR DEATH SUSTAINED IN MY EMPLOYMENT WITH BUILDERS TRANSPORT, INC. MY ONLY REMEDY WILL BE TO RECEIVE BENEFITS UNDER THE PLAN.

Randy signed the election form on June 25, 1993—three months before his accident.

Pursuant to its Plan, Builders paid all of Randy's medical bills up to December 9, 1993. On December 9, 1993, the

Wilsons met with Builders's agents Hal Boiter and Donna Mason. According to Boiter and Mason, the Wilsons accepted a check for $500 as a full and final settlement and release of any claims against Builders.

The Wilsons filed suit against Builders on January 11, 1995. Builders answered by asserting fifteen defenses. After a hearing on cross motions for summary judgment, the trial court struck Builders's defenses of sole negligence, comparative negligence, assumption of the risk, sudden emergency, unavoidable accident, failure to state a claim upon which relief could be granted, accord and satisfaction, release, waiver, and estoppel. On appeal, Builders argues: (1) the trial court's reliance on S.C.Code Ann. § 42–1–510 (1976) (repealed 1996), which strikes sole negligence, comparative negligence, and assumption of the risk defenses for employers who opt out of the Workers' Compensation scheme, was misplaced and overbroad, (2) the trial court incorrectly ruled that Builders's employee coverage plan violated public policy and the Workers' Compensation Act, and (3) the trial court erroneously struck an accord and satisfaction defense when there existed disputed issues of material fact.

We have the authority to hear Builders's appeal pursuant to S.C.Code Ann. § 14–3–330(2)(c) (1976), which permits appellate review for an order that "strikes out an answer or any part thereof or any pleading in any action."

## II.

Builders argues that the trial court incorrectly interpreted S.C.Code Ann. § 42–1–510 (1976) (repealed 1996), in striking the defenses of sole negligence, comparative negligence, and assumption of the risk. We agree.

Builders elected to withdraw from the Workers' Compensation Act. *See* S.C.Code §§ 42–1–330 & 42–1–340 (1976) (both repealed 1996). Before the General Assembly repealed the sections permitting employers to opt out, employers who elected to opt out of the Workers' Compensation Act were stripped of certain common law defenses in lawsuits brought by their employees. S.C.Code Ann. § 42–1–510 (1976) (repealed 1996). Section 42–1–510 stated:

An employer who elects not to operate under this Title shall not, in any suit at law instituted by an employee subject to the Title to recover damages for *personal injury* or death by accident, be permitted to defend any such suit at law upon any or all of the following grounds:

(1) That the employee was negligent;

(2) That the injury was caused by the negligence of a fellow employee; or

(3) That the employee had assumed the risk of the injury.

*Id.* (emphasis added). The term "personal injury" is defined by S.C.Code Ann. § 42–1–160 (Supp.1997) as an "injury by accident arising out of and in the course of employment." Thus, for section 42–1–510 to be applicable, the employee seeking relief must have sustained an injury while acting within the course of employment.

Builders argues that Randy's decision to return to Spartanburg effectively removed the accident in Tennessee from the course of his employment. In *White v. South Carolina State Highway Dept.*, 226 S.C. 380, 85 S.E.2d 290 (1955), the supreme court held:

"An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial.... Taking a somewhat roundabout route, or being off the shortest line between the origin and destination, does not in itself remove the traveller from the course of employment; it must be shown in addition that the deviation was aimed at reaching some specific personal objective."

*Id.* at 383, 85 S.E.2d at 291 (quoting 1 Arthur Larson, *Larson's Workmen's Compensation Law*, §§ 19 & 19.5); *see also Falconer v. Beard–Laney, Inc.*, 215 S.C. 321, 54 S.E.2d 904 (1949) (holding that employee's estate was barred from Workers' Compensation recovery where employee had deviated completely from his master's businesses and had gone on a personal errand). Thus, if Randy's trip to Spartanburg and subsequent journey through Tennessee were a substantial personal deviation from work, then Randy was not acting within the course of his employment.

Although the issue was raised in Builders's memorandum in support of summary judgment and its Rule 59(e) motion, the trial court never ruled on whether Randy was acting within the course of his employment. Whether Randy's trip amounted to a deviation, which removed his accident from the course of his employment, is a question of fact that must be determined before the trial court could have used section 42–1–510 to strike Builders's defenses of sole negligence, comparative negligence, and assumption of the risk. If Randy's attempt to deliver the lumber, albeit not by the shortest practical route, was sufficient to place Randy's accident within the course of his employment, then section 42–1–510 would strike Builders's defenses of sole negligence, comparative negligence, and assumption of the risk. If, on the other hand, Randy's trip was a deviation, then there would be no personal injury, as defined by section 42–1–160, and section 42–1–510 would not bar Builders's defenses. Regardless of which theory holds true, it was an error for the trial court to apply section 42–1–510 and strike Builders's defense without there first being a definitive determination about whether Randy was acting within the scope of his employment.

## III.

■ Builders asserts that even if section 42–1–510 applies to eliminate some of its defenses, it does not apply to the defenses of sudden emergency and unavoidable accident. We agree.

The trial court included sudden emergency and unavoidable accident with its discussion of section 42–1–510 and ruled:

No genuine dispute exists as to a material fact that the common law defenses raised by the Defendant are not available to any employer who elects to operate outside of the Workers' Compensation System against common law claims for damages brought by its employee for injuries that arise out of the work place.

■ The trial court impermissibly extended section 42–1–510 beyond its actual language. The basic rule of statutory construction is that words must be given their plain and ordinary meaning. *Gilstrap v. South Carolina Budget & Control Board*, 310 S.C. 210, 423 S.E.2d 101 (1992). Section 42–1–510 expressly eliminates only sole negligence of the

employee, comparative negligence, and assumption of the risk, with absolutely no mention of sudden emergency or unavoidable accident. *See Nuckolls v. Great Atlantic & Pacific Tea Co.*, 192 S.C. 156, 5 S.E.2d 862 (1939) (stating section 42–1–510 purports only to deprive the non-assenting employer of certain named defenses). By including sudden emergency and unavoidable accident under the ambit of section 42–1–510, the trial court committed a reversible error.

The Wilsons, however, argue that the trial court properly granted summary judgment as to sudden emergency and unavoidable accident because Builders presented no evidence to support these defenses. The Wilsons' argument, however, is not the basis of the trial court's ruling. The trial court discusses only section 42–1–510 in striking the sudden emergency and unavoidable accident defenses and never mentions the sufficiency of the evidence. In addition, there is no evidence from the Wilson's memorandum in support of summary judgment, their memorandum in opposition to summary judgment, or from the transcript from the hearing on summary judgment that the Wilsons ever challenged the sufficiency of Builders's evidence on sudden emergency and unavoidable accident in the trial court. Because the record does not show that these issues were raised before the trial court, we may not decide them now. Rule 209(h), SCACR.

We therefore reverse the trial court's decision to strike Builders's defenses of sudden emergency and unavoidable accident.

## IV.

Builders contends the trial court erred in striking its defenses of accord and satisfaction, release, waiver, and estoppel. We agree.

Builders's defenses of release, waiver, and estoppel are based on different grounds from its accord and satisfaction defense, although included within the same affirmative defense in its answer. Builders asserts that by signing the election form and accepting Builders's Plan, Randy released and waived any possible claims against Builders, and that he should be estopped from bringing any claims against Builders. On a different theory, Builders maintains that the $500 check that the Wilsons accepted acted as an accord and satisfaction.

The trial court considered both of Builders's theories together by ruling that the provisions of Builders's Plan requiring a pre-injury release for future and unknown work-related accidents was void. Citing *Johnson v. Charleston & S. Ry. Co.*, 55 S.C. 152, 32 S.E. 2 (1899), the trial court held that such a pre-injury release is violative of public policy. The trial court also found that section 42–1–610 of the Workers' Compensation Act specifically provides that "[n]o contract or agreement, written or implied, ... shall in any manner operate to relieve any employer ... of any obligation created by this Title," and therefore concluded that any waiver by Randy was invalid.

## A.

Contrary to the trial court's order, a pre-injury release of employers who opt out of the Workers' Compensation Act is not per se void.

The *Johnson* case cited by the trial court dealt with an interpretation of a constitutional section, which has since been repealed. 55 S.C. at 161, 32 S.E. at 5 (interpreting S.C. Const. art. IX, § 15 (repealed 1971)).[1] In *Johnson,* the supreme court agreed with the lower court that a railroad benefit plan, which did not permit an employee to sue the railroad for negligence, was rendered unconstitutional by S.C. Const. art. IX, § 15 (repealed 1971). Even though the railroad's plan was void, the justices were evenly split on the effect of an employee's election to accept the benefits of the plan. Without three votes in favor of reversing, S.C. Const. art. V, § 2 required the supreme court to affirm the lower court's ruling that an employee who accepts the benefits from a void plan is estopped from challenging the legality of the plan. *Johnson,* 55 S.C. at 161, 32 S.E. at 5. Thus, any precedential weight that *Johnson* carries does not support the

---

1. Former constitutional article IX section 15 stated:

 Every employee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of said corporation or its employees as are allowed by law to other persons not employees.... Any contract or agreement expressed or implied, made by any employee to waive the benefit of this section, shall be null and void.

 S.C. Const. art. IX, § 15 (repealed 1971).

Wilsons' position, because Randy, like the employee in *Johnson*, accepted benefits from Builders.[2]

■ In addition, section 42–1–610, the trial court's other authority for ruling that Randy's waiver was void, is not controlling. Section 42–1–610 prevents employers subject to the Workers' Compensation Act from attempting to avoid their statutory obligations. S.C.Code Ann. § 42–1–610 (1976). Builders, however, elected to withdraw from the Workers' Compensation system pursuant to sections 42–1–330 and 42–1–340. Therefore, section 42–1–610 does not apply to any waiver by Randy.

■ Finally, Randy argues that his waiver violates public policy because it releases Builders from tort liability for any injuries which its employees might suffer. As support, Randy cites 27 Am.Jur.2d *Employment Relationship* § 260 (1996), which states, "Agreements between employer and employee attempting to exonerate the employer from liability for future negligence, whether of himself or of his employees, or limiting his liability on account of such negligence, are generally held to be void as against public policy." *Id.* at 757.

Initially, we note that the election form does not release or exonerate Builders from all liability. According to the Plan, Builders is still liable for medical costs and some compensation to injured employees.[3]

■ Because Builders opted out of the Workers' Compensation scheme, the Plan containing the election form

---

2. The trial court also gave the bare citation *"Evans v. Town of Edgefield,* 132 S.C. 380, 129 S.E. 207" in a string cite after *Johnson. Evans* involved a suit to enjoin a city from entering or condemning land for street purposes. Apparently, the trial court was attempting to cite *Cato v. Grendel Cotton Mills,* 132 S.C. 454, 129 S.E. 203 (1925). The supreme court in *Cato* cites *Johnson* for the proposition that "[a] railroad company 'cannot make a valid contract whereby it will be exempt from liability from negligence.'" *Id.* at 458, 129 S.E. at 204 (other citations omitted). Like *Johnson, Cato* did nothing more than reflect the South Carolina Constitution's protection of railroad employees.

3. Builders moved to have the record supplemented with materials, which included the terms of the Plan. This motion was granted with the reservation that the Wilsons could argue that the supplemental material was not raised before the trial court. Although the Wilsons

should be governed by contract law. Although some contracts may violate public policy, "[a] sound public policy requires the enforcement of contracts deliberately made, which do not clearly contravene some positive law or rule of public morals.... Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak." *Rice v. Multimedia, Inc.,* 318 S.C. 95, 100, 456 S.E.2d 381, 384 (1995). Here, Builders agreed to pay medical bills and lost wages for employees who become injured in exchange for the employees' agreement not to sue Builders. We can find no clear law or code of morals which say that prior to an accident it is wrong to exchange an offer of guaranteed payments for a release from tort liability. *See generally Farnham v. Superior Court of Los Angeles County,* 60 Cal.App.4th 69, 70 Cal.Rptr.2d 85, 88 (1997) ("Although exemptions from all liability for intentional wrongs, gross negligence and violations of the law have consistently been invalidated, we have not found any case addressing a limitation on liability for intentional wrongs, gross negligence or violations of the law."). In fact, Builders's Plan mirrors the Workers' Compensation trade-off codified by S.C.Code Ann. § 42–5–10 (1976). Thus, we see no reason why public policy should release Randy from his election to participate under the terms of Builders's Plan.

We therefore reverse the trial court's striking of Builders's release, waiver, and estoppel defenses.

### B.

 The essential elements of an accord and satisfaction are an agreement to settle a dispute and consideration which supports the agreement. *Mixson v. Rossiter,* 223 S.C. 47, 74 S.E.2d 46 (1953). Builders presented testimony from Boiter and Mason that the Wilsons signed a document, which read:

> [W]e, Randy Wilson and Tammy Wilson, for and in consideration of the sum of five Hundred and 00/100 ($500.00) Dollars and payment of all authorized medical bills incurred

---

moved to have the materials designated as an appendix to the record, they presented no evidence that the supplemental material was not before the trial court. We therefore consider the supplemental material as part of the record, and we hereby deny the Wilsons' motion.

prior to the date of execution of this release ... do hereby release and forever discharge Builders Transport, Inc, its Occupational Benefits Program, ... from any and all actions, causes of action, demands and/or claims of any nature whatsoever ... growing out of an accident on October 8, 1993.

Although Builders lost the signed document, Builders was able to produce an endorsed check made out to Randy for $500. We believe that this was enough evidence to send the accord and satisfaction defense to a jury. *Spartanburg Hotel Corp. v. Alexander Smith, Inc.*, 231 S.C. 1, 97 S.E.2d 199 (1957). We therefore reverse the striking of the accord and satisfaction defense. *Williams v. Johnson*, 244 S.C. 406, 137 S.E.2d 410 (1964).

## V.

The decision of the trial court striking Builders's defenses of sole negligence, comparative negligence, assumption of the risk, sudden emergency, unavoidable accident, release, waiver, estoppel, and accord and satisfaction is hereby reversed, and the case is remanded for further proceedings in accordance with this decision.

**REVERSED AND REMANDED.**

CURETON and HOWARD, JJ., concur.