673 S.E.2d 448

HISTORIC CHARLESTON HOLDINGS, LLC, Respondent,

v.

Gerard MALLON, Dixie Holdings, LLC, and
Dixie Developers, LLC, Defendants,

Of whom Gerard Mallon is the, Petitioner.

No. 26601.

Supreme Court of South Carolina.

Heard May 7, 2008.

Decided Feb. 17, 2009.

418

422

Deborah Harrison Sheffield, of Columbia, for Petitioner.

Charles P. Summerall IV, of Buist Moore Smythe & McGee, of Charleston, for Respondent.

## Chief Justice TOAL:

This appeal arises out of a master-in-equity's order to dissolve a limited-liability company (LLC). The master distributed the remaining assets of the company between its two members, Appellant Gerard Mallon ("Mallon") and Respondent Historic Charleston Holdings ("HCH"), and awarded HCH prejudgment interest and attorneys fees. The court of appeals reversed the master's judgment and remanded the case for a full accounting of the LLC. This Court granted certiorari and we reverse.

### FACTUAL/PROCEDURAL BACKGROUND

Mallon, HCH, and William Storen formed Dixie Holdings, LLC ("Dixie") in June 1998 for the purpose of acquiring, owning, and developing property in Charleston. Priestly Coker ("Coker"), who along with his wife comprised the entire membership of HCH, handled the financial accounting and management of properties acquired by Dixie; Mallon, the owner of a construction company, handled repairs and renovations to the properties; and Storen, a licensed realtor, acted as the real estate agent for the properties Dixie placed for sale. Mallon and HCH each held a 49.5% share of Dixie and Storen apparently held 1%.[1]

Mallon and HCH were also equal members in Dixie Developers, LLC ("Dixie Developers"), a company organized just

---

1. The parties' testimony on various aspects of Dixie's business arrangement, particularly with regard to Storen, was vague and often conflicting. Because Storen's participation is irrelevant to the issues before this Court, we do not attempt to parse out the details of Mallon's and HCH's business relationship with Storen.

one month prior to the organization of Dixie for the similar purpose of acquiring, owning, and developing property in Charleston. Although Dixie and Dixie Developers were distinct entities, the funds of the two companies were held in a single bank account under the name of Dixie Developers, on which both Coker and Mallon had signatory authority.

Dixie initially acquired four properties: 10 Felix Street, 12 Felix Street, 15 Felix Street, and 22 Felix Street. The sale of 12 Felix occurred in December 1998, and 10 Felix was sold in April 1999 after both had been repaired and renovated. The proceeds from the sale of these properties were used to reimburse authorized expense items associated with the particular piece of property being sold, and the net proceeds were equally distributed to HCH and Mallon. Meanwhile, Dixie Developers also acquired three properties which it renovated and placed for sale.

In late 1999, Mallon and Storen made the first of multiple requests from Coker for a full financial accounting of Dixie as well as copies of the company's bank records. The computer printouts and documents provided by Coker, which Coker testified comprised his entire financial record collection, were apparently unsatisfactory to Mallon and Storen. Thereafter, in December 1999, Mallon, Storen, and Coker met to discuss their differences regarding the accounting for Dixie. An agreement signed by the parties at the meeting stated that sales of Dixie's property would continue "while these matters are being dealt with" and further provided for the sales proceeds to be held in an escrow account in the meantime.

Around this same time, HCH sold its interest in Dixie Developers to Mallon, giving Mallon 100% interest in that company. The sale price of HCH's interest purportedly reflected HCH's one-half interest in the company minus HCH's share of Mallon's authorized expenses related to Dixie Developers' properties, all three of which had sold prior to the buyout.

Following the December 1999 agreement between Mallon, Storen, and Coker, Dixie sold its remaining two properties. Number 15 Felix sold first in April 2000, and Mallon placed the net proceeds totaling $41,845.30 into a new Dixie Developers account he had opened as the now-sole member of that

entity. Mallon refused HCH's demands to place the sale proceeds from 15 Felix into a "proper escrow account" in Dixie's name in accordance with the parties' earlier agreement. When 22 Felix later sold in December 2001, HCH and Mallon agreed to an equal distribution of the net proceeds without first placing the funds in escrow.

In October 2002, Storen dissociated from Dixie, leaving Mallon and HCH each with 50% of the company. That same month, unable to resolve their differences on the financial accounting and bank records for Dixie, and further unable to compel Mallon to move the sale proceeds from 15 Felix to an agreeable escrow arrangement or otherwise distribute HCH's share of the proceeds, HCH filed a civil claim against Mallon, Dixie, and Dixie Developers, individually and in a derivative capacity as a member of Dixie. The complaint sought a judicial dissolution of Dixie along with a full financial accounting of both Dixie and Dixie Developers, injunctive relief for Mallon's diversion of the 15 Felix proceeds, a declaratory judgment as to HCH's rights as a member of Dixie, prejudgment interest, and attorneys' fees.

Mallon initially responded to HCH's complaint in a *pro se* letter in November 2002 indicating he was interested in submitting the issue to binding arbitration. After further communication, Mallon retained counsel, and the parties referred the case to a master-in-equity in May 2003. Around this same time, Mallon issued a memorandum alleging he was entitled to reimbursement for construction work he performed and other miscellaneous expenses associated with properties he owned with HCH. Mallon formally asserted these charges in October 2003 when pursuant to the master's consent order, Mallon filed an amended answer in which he argued, among other things, that he was entitled to set off the proceeds from the sale of 15 Felix in the amount of his alleged expenses. Mallon's itemization of his expenditures included charges associated with each of the Felix Street properties acquired by Dixie, as well as charges associated with the three properties acquired by Dixie Developers.

At trial, the master-in-equity found that HCH was entitled to one-half of the 15 Felix sale proceeds, plus pre-judgment interest on HCH's share of the proceeds. The master further

ordered the dissolution and termination of Dixie within thirty days and awarded HCH statutory costs and attorneys' fees and costs.

On appeal, the court of appeals reversed the master's award to HCH of one-half of the 15 Felix proceeds and prejudgment interest, and remanded the case for a formal accounting of Dixie. *See Historic Charleston Holdings v. Mallon*, 365 S.C. 524, 617 S.E.2d 388 (Ct.App.2005). The court also held that the master did not abuse his discretion in awarding attorneys' fees. *Id.* The court of appeals dismissed Mallon's other arguments on grounds of issue preservation. *Id.* This Court granted certiorari to review the decision of the court of appeals, and Mallon raises the following issues for review:

I.   Is Mallon entitled to a full accounting for Dixie Holdings and Dixie Developers?

II.  Is HCH entitled to one-half of the proceeds from the sale of 15 Felix Street?

III. Did the master err in holding that the relief granted to HCH was justified by Mallon's wrongful dissociation from Dixie?

IV.  Did the master err in excluding evidence of Coker's self-dealing and misappropriation of Dixie's funds?

V.   Did the master err in awarding prejudgment interest because the amount awarded HCH was not liquidated?

VI.  Did the court of appeals err in holding that the master properly awarded HCH statutory costs and attorneys' fees?

## LAW/ANALYSIS

### I.  Accounting

Mallon argues that he is entitled to a full accounting for Dixie Holdings and Dixie Developers. Specifically, Mallon contends that a full accounting is necessary to the dissolution and distribution of assets of Dixie and that the scope of the action should not be limited to a determination of the parties' rights with respect to the proceeds from the sale of 15 Felix. We disagree.

■ An action for an accounting sounds in equity. Therefore, this Court may review the record and make findings in accordance with its own view of the preponderance of the evidence. *See Lawson v. Rogers,* 312 S.C. 492, 495, 435 S.E.2d 853, 855 (1993).[2]

■ Noting that an operating agreement is a binding contract that governs the affairs of an LLC, *see* S.C.Code Ann. § 33–44–103 (2006), the court of appeals held that section 12.6 of Dixie's operating agreement, which provides that each of Dixie's members "shall be furnished with a statement setting forth the assets and liabilities of the Company as of the date of the complete liquidation," entitled the parties to a formal accounting of Dixie. In our view, this was error. While we acknowledge that Section 12.6 requires a "statement" of assets and liabilities, we would distinguish this requirement from the equitable remedy of "accounting" sought by the parties in the instant case, which refers to "an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due." 1 Am.Jur.2d *Accounts and Accounting* § 52 (2005).[3] Accordingly, we find no prevailing requirement in the operating agreement obligating the Court to order a remedy in the form of a judicial accounting of Dixie.

■ Moreover, even if, as the dissent argues, the "statement of assets and liabilities" provided for in the operating agreement entitles Mallon and HCH to a formal judicial

2. The court of appeals remanded this case for a formal accounting of Dixie, but held that Mallon's request for an accounting for Dixie Developers and all Mallon's remaining issues except a subpart of the attorneys' fees issue were not preserved for appeal. Unless otherwise noted, we find that each of these issues were raised to and ruled upon by the master and that the court of appeals therefore erred in dismissing them on preservation grounds, *see I'On, LLC v. Town of Mount Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) (acknowledging that an issue raised to and ruled upon by the lower court is preserved for appellate review), and we proceed with an analysis of their merits in the interest of judicial economy. *See S. Bell Tel. & Tel. Co. v. Hamm,* 306 S.C. 70, 75, 409 S.E.2d 775, 778 (1991) (deciding an issue on appeal in the interest of judicial economy).

3. *See also* Carmen Harper Thomas, Note, *Limited Liability Companies Are Off and Running: Historic Charleston Holdings, LLC v. Mallon, Accountings, and Derivative Actions in LLC Litigation,* 57 S.C. L.Rev. 441, 453 (2006).

accounting, we find that Mallon and Coker (on behalf of HCH) waived this right by refusing to effectively communicate and cooperate with one another, and further failing to independently resolve the matter when both had access to Dixie's bank records.[4] *See Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 344, 415 S.E.2d 384, 387–88 (1992) (defining a waiver as a voluntary and intentional abandonment or relinquishment of a known right by a party who possessed actual or constructive knowledge of its rights, or of all the material facts upon which they depended).[5]

■ Additionally, we can find no provision in the LLC Act requiring a court to order a complete accounting under the circumstances. Rather, we find that the LLC Act grants broad judicial discretion in fashioning remedies in actions by a member of an LLC against the LLC and/or other members. *See* S.C.Code Ann. §§ 33–44–410 cmt., –801 cmt. (2006). Accordingly, we hold that Mallon is not entitled to a full accounting of Dixie or Dixie Developers, and that this Court may determine the appropriate remedy in its discretion.

■ To this end, we believe that a full financial accounting of both Dixie and Dixie Developers is not the appropriate remedy in this matter. First, HCH's only purpose in naming Dixie Developers as a party to the immediate action was because the funds which HCH sought were in a Dixie Developers bank account that was inaccessible to HCH. Otherwise, Dixie Developers is a completely separate entity from Dixie,

---

4. Mallon and Storen testified that they requested financial documents from Coker multiple times, and that when Coker finally complied, the documents provided were inadequate and incomplete. Mallon, however, as co-signatory on the first Dixie Developers bank account, was equally capable of acquiring the bank records and, upon receiving Dixie's financial documents from Coker, taking the documents to a certified public accountant for an accounting. Mallon claimed to have done this much, but refused to name the accountant and never produced any documents generated out of this review.

5. We also question the dissent's interpretation of the operating agreement to require that an accounting be provided "prior to dissolution." Under the express terms of the agreement, the financial statement is to be furnished "as of the date of complete liquidation." *See also* Thomas, *supra* note 3, at 454.

and therefore, any right to an accounting for Dixie Developers is irrelevant in this case.

Second, as explained more fully in Section II, we find that the only contentious issue remaining incidental to the dissolution of Dixie is the distribution of approximately $42,000 from the sale of 15 Felix. The record reveals that Dixie's last business transaction occurred nearly seven years ago with the sale of 22 Felix in December 2001. In the meantime, neither the parties nor any creditors have asserted any legitimate outstanding liabilities incurred by Dixie, nor are there any other Dixie assets to which any member is legitimately claiming entitlement. Because the source of the parties' dispute is a relatively small sum of money generated from a single real estate transaction—the sale of 15 Felix—in April 2000, we find that a full financial accounting would unnecessarily prolong this otherwise simple matter. *See* 1 Am.Jur.2d *Accounts and Accounting* § 56 (2005) (noting that an accounting is an appropriate remedy when the accounts at issue are complicated or mutual).

For these reasons, we hold that a full accounting of either Dixie or Dixie Developers is neither required nor necessary in this action and that the proper resolution in this matter is for this Court to make a single determination of the parties' rights with respect to the proceeds from the sale of 15 Felix. Accordingly, we reverse the decision of the court of appeals remanding the case for a full accounting of Dixie.

## II.  Distribution of sale proceeds from 15 Felix

Mallon argues that HCH is not entitled to one-half of the proceeds from 15 Felix. Specifically, Mallon contends that he is entitled to set-off of the 15 Felix proceeds for nearly $10,000 in additional charges for construction work and miscellaneous expenses related to each of Dixie's Felix Street properties, and another $90,000 in similar outstanding charges associated with Dixie Developers' properties. We disagree.

Because the underlying action primarily arises in the Court's equity jurisdiction, we review the master's determination of the parties' rights with respect to the 15 Felix proceeds de novo. *See Elias v. Firemen's Ins. Co.,* 309 S.C. 129, 132, 420 S.E.2d 504, 505 (1992) (finding that an action maybe legal

or equitable, depending upon whether law or equity would have had jurisdiction if there had been no declaratory judgment procedure).

Mallon initially raised the issue of his additional expenses associated with Dixie Developers and each of Dixie's Felix Street properties in May 2003 and did not formally assert the right to set-off for these additional expenses until he filed his amended (and untimely) answer, without prejudice to HCH's rights, in October 2003. The preceding February, however, Mallon failed to respond to HCH's Requests for Admission, which included the admission that "HCH is entitled to about 50% of said proceeds." Rule 36, SCRCP, provides that a matter is deemed admitted when the party served fails to respond with a written answer or objection regarding the admission. Although the matter could be resolved at this juncture under Rule 36, we proceed with an analysis of Mallon's right to set-off, thereby providing additional legal and equitable grounds for the Court's conclusion.

### a. Additional expenses associated with Dixie Developers

Mallon asserts that he underwrote the cost of numerous building repair projects and incurred other miscellaneous expenses, totaling nearly $90,000 with respect to Dixie Developers' properties. We hold that Mallon is not entitled to set-off of the funds at issue for charges associated with Dixie Developers based on the theories of accord and satisfaction and mutuality.

The elements of an accord and satisfaction are an agreement between the parties to settle a dispute, and the payment of the consideration which supports the agreement. *Wilson v. Builders Transp., Inc.*, 330 S.C. 287, 297, 498 S.E.2d 674, 680 (Ct.App.1998). To constitute accord and satisfaction, there must have been a meeting of the minds. *Tremont Constr. Co. Inc. v. Dunlap*, 310 S.C. 180, 182, 425 S.E.2d 792, 793 (Ct.App.1992). In our opinion, Mallon's December 1999 buy-out of HCH's interest in Dixie Developers constitutes an act of accord and satisfaction with respect to HCH's liability for charges associated with the Dixie Developers properties. The amendment to the Dixie Developers operating agreement made pursuant to the buy-out, and reflecting Mallon's 100%

ownership clearly indicates the parties' agreement to wind up their business relationship through Mallon's purchase of HCH's interest for fair value. The circumstances surrounding the negotiation of the terms of the buy-out are further evidence of the parties meeting of the minds in this regard. Although HCH and Mallon originally negotiated a price of $80,000 for HCH's interest in Dixie Developers, Mallon asserted additional charges related to the Dixie Developers property shortly thereafter. After further negotiations, the parties agreed on an adjusted purchase price of $63,500, and HCH refunded the difference to Mallon. For these reasons, we hold that the buy-out constituted an accord and satisfaction of any liability to Dixie Developers on the part of HCH, and therefore, Mallon is not entitled to set-off for expenses alleged after the fact.

Lack of mutuality is an additional theory prohibiting the set-off of Mallon's alleged charges related to Dixie Developers from the proceeds of 15 Felix. The general rule governing set-off provides that the demands to be set off must be mutual, and that debts accruing in different rights cannot be set off against each other. *Peurifoy v. Gamble,* 145 S.C. 1, 11, 142 S.E. 788, 791 (1928). In our view, HCH's alleged debt to Mallon for Dixie Developers' work and Mallon's withholding of HCH's proceeds from the sale of 15 Felix, a Dixie property, are clearly not mutual demands. The two companies were distinct entities, set up at different times by different members, and at no time had any shared ownership of the properties they listed for sale. Although the companies apparently shared a bank account during the time that HCH was still a member of Dixie Developers, we find this to be more indicative of poor fiscal management skills than mutuality. Otherwise, Dixie Developers is a completely separate entity from Dixie, and Mallon is not entitled to set off his expenses associated with Dixie Developers from the proceeds of property belonging to Dixie.[6]

---

6. Mallon points out that the lack of strict mutuality does not *per se* prohibit a court exercising its equity jurisdiction from allowing set-off. *See W.M. Kirkland, Inc. v. Providence Wash. Ins. Co.,* 264 S.C. 573, 581, 216 S.E.2d 518, 521 (1975). However, considering the lack of strict mutuality in conjunction with the accord and satisfaction that occurred between the parties with respect to Dixie Developers' financial affairs,

### b. Additional expenses associated with Felix Street properties

Mallon's asserts that he is entitled to reimbursement for nearly $10,000 in construction work and miscellaneous expenses associated with Dixie's Felix Street properties. We hold that under theories of laches and waiver, Mallon is not entitled to set-off of the 15 Felix proceeds for expenses associated with the development of the Felix Street properties.

Laches is an equitable doctrine defined as "neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988). In order to establish laches as a defense, a party must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice to the party asserting the defense of laches. *See Strickland v. Strickland*, 375 S.C. 76, 83, 650 S.E.2d 465, 469 (2007).

A timeline of the relevant events is instructive to the Court's analysis. Number 12 Felix sold in December 1998, 10 Felix in April 1999, 15 Felix in April 2000, and 22 Felix in December 2001. The record reveals that except for the distribution of the 15 Felix proceeds at issue here, Mallon and HCH unconditionally agreed on a fifty-fifty distribution of proceeds at the closings for each of the Felix Street properties. The record also reveals that Mallon and HCH had established a course of dealing in each of their business ventures for reimbursement of additional expenses.[7] Pursuant to this course of dealing, Mallon would produce an itemized request for reimbursement, and HCH would tender the appropriate payment through either an adjustment in the standard distribution of sale proceeds at closing, or with a separate check for the total costs.[8]

---

this Court is fully justified in refusing to permit an equitable set-off under the circumstances.

**7.** Aside from their relationship through Dixie and Dixie Developers, Mallon and HCH appear to have also jointly owned numerous other pieces of property for real estate development purposes.

**8.** The record contains at least two documents representative of the parties' course of dealing: (1) a September 1999 addendum to a

■ Given this established course of dealing between the parties, Mallon's May 2003 demand for reimbursement for charges associated with the Felix Street properties—a three-year-plus delay from the date of sale of three of the properties, and a twenty-month delay from the date of sale of the fourth property—is unreasonable. Furthermore, HCH relied on Mallon's delay to its detriment by not seeking timely reimbursement of its own expenses in developing the property and by further agreeing to sell the properties at a specified price in anticipation of a certain profit. Accordingly, the doctrine of laches bars Mallon from setting off HCH's one-half interest in the 15 Felix proceeds with untimely allegations of his outstanding expenses on the Felix Street properties.

■ To the extent that the clause in Dixie's operating agreement providing for reimbursement "for all authorized, direct out-of-pocket expenses incurred by [members] on behalf of the Company," entitles Mallon to recoup his expenses at this late date, we hold that Mallon has waived this right by untimely asserting the alleged expenses and in a manner totally inconsistent with the parties' prior course of dealing. *See Janasik*, 307 S.C. at 344, 415 S.E.2d at 387–88 (defining waiver as the voluntary and intentional abandonment or relinquishment of a known right by a party that knew of its rights, or of all the material facts upon which they depended).

For these reasons, we find that Mallon is not entitled to set-off for his latent expenses, and that therefore, Mallon and HCH are each entitled to half of the proceeds from 15 Felix representing their respective interests in Dixie.

### III. Relief based on Mallon's wrongful dissociation

Mallon argues that the master erred in holding that the relief granted to HCH was justified by Mallon's wrongful dissociation from Dixie. We agree, but hold that the master's error was harmless.

---

settlement statement explaining the uneven distribution of funds from the sale of a Dixie Developers property to Mallon and Coker due to Mallon's expenses in performing construction and repair work on the property; and (2) a May 1999 reimbursement check from HCH to Mallon based on an itemized list of Mallon's expenses associated with their shared real estate assets, including several of the Felix Street properties.

To warrant reversal based on the admissibility of evidence, an appellant must prove both the error of the ruling and the resulting prejudice. *Conner v. City of Forest Acres,* 363 S.C. 460, 467, 611 S.E.2d 905, 908 (2005). The substance of the instant litigation involves matters of accounting and distribution incidental to the judicial dissolution of Dixie. Mallon's dissociation, which did not even occur until after HCH filed its complaint, is completely irrelevant and therefore, the master erred in basing his remedy on Mallon's allegedly wrongful dissociation. However, because there were additional legitimate grounds upon which the master granted relief to HCH, we hold the error was harmless.

## IV. Exclusion of evidence of Coker's self-dealing

Mallon argues that the master erred in excluding evidence of Coker's self-dealing and misappropriation of Dixie's funds. We disagree.

The admission of evidence is a matter left to the discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *Hanahan v. Simpson,* 326 S.C. 140, 155, 485 S.E.2d 903, 911 (1997). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support. *Patel v. Patel,* 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004).

In this case, the parties agreed to provide each other all documents to be presented at trial by November 21, 2003. On the last working day before trial in January 2004, Mallon alleged for the first time in an amended pre-trial brief that Coker misappropriated Dixie funds and engaged in self-dealing. The master granted HCH's motion in limine to exclude all "new documents" and sustained each of HCH's objections to Mallon's trial testimony which attempted to justify improperly escrowing the 15 Felix proceeds based on his alleged discovery of Coker's misappropriation of Dixie funds. Citing *Scott v. Greenville Housing Authority,* 353 S.C. 639, 652, 579 S.E.2d 151, 158 (Ct.App.2003), the master found that exclusion of evidence of Coker's self-dealing was proper because the rules of discovery "mandate full and fair disclosure to prevent a trial from becoming a guessing game or one of ambush for either party."

In deciding what sanction to impose for failure to disclose evidence during the discovery process under Rule 37, SCRCP, the trial court should weigh the nature of the interrogatories, the discovery posture of the case, willfulness, and the degree of prejudice. *Samples v. Mitchell*, 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct.App.1997). In the order, the master noted Mallon's earlier failure to respond to HCH's requests for admission, along with both parties' stipulation that they had agreed to exchange their entire files on the case on or before November 21, 2003. Although Mallon asserts that HCH would not have been prejudiced by the evidence of Coker's self-dealing because it came from documents provided to Mallon by HCH itself, Mallon neglects to consider the prejudicial effect of an "ambush" at trial. For these reasons, we hold that the master did not abuse his discretion in excluding evidence of self-dealing by Coker.

## V. Award of pre-judgment interest

Mallon argues that the master erred in awarding prejudgment interest on the distribution to HCH because the sum was not liquidated. We agree.

The law permits the award of prejudgment interest when a monetary obligation is a sum certain, or is capable of being reduced to certainty, accruing from the time payment may be demanded either by the agreement of the parties or the operation of law. *Butler Contr., Inc. v. Court St., LLC*, 369 S.C. 121, 133, 631 S.E.2d 252, 259 (2006). Generally, prejudgment interest may not be recovered on an unliquidated claim in the absence of agreement or statute. *Id.* The fact that the amount due is disputed does not render the claim unliquidated for purposes of awarding prejudgment interest. Rather, the proper test is "whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Id.*

The award of prejudgment interest will not be disturbed on appeal unless the trial court committed an abuse of discretion. *Jacobs v. Am. Mut. Fire Ins. Co.*, 287 S.C. 541, 544, 340 S.E.2d 142, 143 (1986). In this case, the master awarded prejudgment interest because "[HCH] is entitled to half of the funds, and because [HCH] has not had access to

the funds for almost four years now." We find that this ruling conflicts with this Court's established law, and is not reasonably supported by the evidence in the record.

The record reveals that the disagreement between Mallon and Coker over Coker's method of accounting led to the escrow of the 15 Felix proceeds at issue in the instant case. Prior to the sale of 15 Felix, the net proceeds from the sales of Dixie's property had been divided fifty-fifty. The logical conclusion to be drawn from this pattern of events is that the members of Dixie were contemplating a future distribution of the escrowed funds that, depending on the outcome of a complete accounting, may not have been the standard fifty-fifty split. Under these circumstances, we find that the measure of recovery for prejudgment interest was unliquidated at the time the parties' claims to the proceeds arose, and accordingly, we hold that the master erred in awarding prejudgment interest to HCH.

## VI. Attorneys' fees

Mallon argues that the court of appeals erred in upholding the master's award of statutory attorneys' fees to HCH. We agree.

Attorney's fees are not recoverable unless authorized by contract or statute. *See Jackson v. Speed,* 326 S.C. 289, 307, 486 S.E.2d 750, 760 (1997). In this case, the master awarded HCH attorneys' fees pursuant to S.C.Code Ann. § 33–44–1104 (2006), which authorizes the award of reasonable costs and attorneys' fees to a plaintiff who prevails, in whole or in part, in a derivative action for an LLC. A claim for statutory attorneys' fees is an action at law resting within the sound discretion of the trial court and may not be disturbed on appeal absent an abuse of discretion. *Patel,* 359 S.C. at 533, 599 S.E.2d at 123.

Mallon argues that it is inequitable to award HCH attorneys' fees because Coker's failure to fulfill his responsibilities under the operating agreement necessitated the instant action. The court of appeals rejected this argument, ruling instead that Mallon's actions brought about the case, and therefore held that the master's award of attorneys' fees did not amount to an abuse of discretion. We disagree.

■ The award of statutory attorneys' fees does not fall within a court's equitable jurisdiction. *See Harvey v. S.C. Dep't of Corrections,* 338 S.C. 500, 507, 527 S.E.2d 765, 769 (Ct.App.2000) (holding that where the right to relief is entirely statutory, the action is one at law). Therefore, we hold that the court of appeals erred in affirming the master's award on these grounds. We note, however, that even if the award of attorneys' fees in this case sounded in equity, in our opinion, the equities fall in favor of each side bearing responsibility for their own attorneys' fees because both parties won on some matters and lost on others, and neither entered the instant litigation with clean hands.

■ Rather, as a matter of law, we find that HCH failed to properly plead the instant case as a shareholder derivative action as required by the relevant attorneys' fee statute, and accordingly, we hold that the master committed an abuse of discretion in awarding attorneys' fees under the attorneys' fee provision of the LLC Act. Our courts have held that "[i]t is the substance of the requested relief that matters 'regardless of the form in which the request for relief was framed.'" *Richland County v. Kaiser,* 351 S.C. 89, 94, 567 S.E.2d 260, 262 (Ct.App.2002) (quoting *Standard Fed. Sav. & Loan Ass'n v. Mungo,* 306 S.C. 22, 26, 410 S.E.2d 18, 20 (Ct.App.1991)). Although in the instant case, HCH submitted a verified complaint declaring in the opening sentence that HCH brought the action "individually and in a derivative capacity," the complaint nevertheless failed to plead with particularity the allegations necessary to state a complaint in a shareholder derivative action. *See* Rule 23(b), SCRCP. Furthermore, the relief granted by the master was entirely personal to HCH in that the master ordered the distribution of HCH's interest in the Felix Street proceeds directly to HCH instead of an initial return of the converted funds in whole to Dixie as an entity. *See also Ward v. Griffin,* 295 S.C. 219, 221, 367 S.E.2d 703, 704 (Ct.App.1988) (determining that a suit may be classified as a shareholder derivative action "if the gravamen of the complaint is injury to the corporation and not injury to the individual interests of the stockholder"). For these reasons, we cannot construe the complaint to be a prayer for derivative relief on behalf of Dixie. *See also* Rule 8(f), SCRCP (providing that pleadings should be construed "to do substantial justice to all parties").

Because HCH failed to plead the instant case as a shareholder derivative action, we hold that the master erred in awarding attorneys' fees under § 33–44–1104 of the LLC Act. Accordingly, we reverse the decision of the court of appeals and hold that Mallon and HCH are responsible for their own attorneys' fees in this matter.[9]

## CONCLUSION

For the foregoing reasons, we hold that a full accounting of Dixie and Dixie Developers is not required and that HCH is entitled to one-half of the proceeds from the sale of 15 Felix. We further hold that the master's grant of relief based on Mallon's allegedly wrongful dissociation from Dixie was harmless error and that the master did not err in excluding evidence of Coker's self-dealing. Finally, we hold that HCH is not entitled to either prejudgment interest or statutory attorneys' fees in this matter. This dispute began in 2000, nearly eight years ago, and involves a relatively small amount of money and a small number of members. Although we respect the dissent's position, in our view, remanding this case after years of litigation for a full accounting is not required by law or equity or by the parties' agreement and no beneficial purpose would be served in prolonging this case. Accordingly, we reverse the decision of the court of appeals.

WALLER, J., and Acting Justices JAMES E. MOORE and JAMES E. LOCKEMY, concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES:

I respectfully dissent from part I and part II of the majority opinion.

I agree with the majority in their finding that the master committed harmless error in holding that the relief granted to

---

9. In light of our holding, we need not address Mallon's remaining evidentiary arguments regarding the master's award of attorneys' fees. *See Futch v. McAllister Towing of Georgetown,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address additional issues if the resolution of another issue is dispositive).

HCH was justified by Mallon's dissociation from Dixie. I also agree with the majority's finding that the master did not abuse his discretion in excluding evidence of self-dealing and misappropriation of Dixie's funds by Coker. Moreover, I agree with the majority that the master erred in awarding prejudgment interest to HCH, because the amount awarded HCH was not liquidated at the time the parties' claims to the proceeds arose. Furthermore, I agree with the majority that HCH failed to plead the instant case as a shareholder derivative action; therefore, the master erred in awarding attorney's fees under § 33–44–1104 (2006) of the LLC Act. However, I respectfully disagree with the majority's finding that Mallon is not entitled to a full accounting for Dixie Holdings, and that HCH is entitled to one-half of the proceeds from the sale of 15 Felix Street.

Pursuant to S.C.Code Ann. § 33–44–103 (2006), operating agreements are binding contracts which are superior to statutory authority where they are in place. Statutory law; however, will apply if the operating agreement is silent as to some matter. Therefore, when a court is deciding a controversy between limited liability company members, it must first evaluate the operating agreement regarding a particular issue prior to looking to the statutory law governing areas not covered by the agreement.

Section 12.6 of the Dixie Holdings' operating agreement is relevant to Mallon's claims for reimbursement and the need for a full accounting. The section, entitled "Final Accounting," states that "each of the members shall be furnished with a statement setting forth the assets and liabilities of the Company as of the date of the complete liquidation," and "[u]pon compliance by the Company with the foregoing distribution plan, the Members shall cease to be such, and they shall execute and cause to be filed any and all documents necessary with respect to termination and cancellation."

Dixie Holdings' operating agreement thus requires an accounting prior to dissolution.[10] Because the operating agreement required an accounting, and since operating agreements govern the affairs of the company and the conduct of its

---

10. I disagree with the majority's assertion that the operating agreement does not require an accounting prior to dissolution. In construing a

business according to § 33–44–103 (2006) of the LLC Act, an accounting is necessary prior to the dissolution of Dixie Holdings' and the distribution of the $41,845.30 from the sale of 15 Felix Street.

Even if an accounting were not mandatory according to the operating agreement, a full accounting would have been necessary according to statute under the facts of this case. Pursuant to § 33–44–410(a)(1) (2006) of the S.C.Code, a member is entitled to maintain a suit for an accounting. When that request is made in the context of an action winding up the business of a limited liability company, courts are required to determine the assets, discharge obligations to creditors, and distribute the surplus to members. S.C.Code Ann. § 33–44–806(a) (2006). In order to complete the winding up of Dixie Holdings, I would hold that a full accounting is required and necessary under the LLC Act even if it were not required by the agreement.

---

contract, this Court's main concern is to ascertain and give effect to the intention of the parties. *D.A. Davis Const. Co., Inc. v. Palmetto Properties, Inc.*, 281 S.C. 415, 315 S.E.2d 370 (1984). The order of the sentences in section 12.6 suggests the chronology of the actions. The section sets forth the accounting requirement and then provides that "[u]pon the compliance by the Company with the foregoing distribution plan" the Company will terminate. This suggests that the accounting should be completed before dissolution. Reading the policy in this way also produces a more reasonable result, since an accounting prior to liquidation may have an impact upon distribution, while an accounting after liquidation will not. "Common sense and good faith are leading touchstones of construction of provisions of contract; where one construction makes provisions unusual or extraordinary and another construction, which is equally consistent with language employed, would make it reasonable, fair, and just, latter construction must prevail." *C.A.N. Enterprises, Inc. v. South Carolina Health and Human Services Finance Com'n*, 296 S.C. 373, 373 S.E.2d 584 (1988). Finally, in ascertaining the intent of the parties, we may examine the situation of the parties as well as their purposes at the time the contract was entered into. *Klutts Resort Realty, Inc. v. Down'Round Development Corp.*, 268 S.C. 80, 232 S.E.2d 20 (1977). As noted above, the parties met and signed the operating agreement in part due to dissatisfaction with Coker's responses to multiple requests by Mallon and Storen for full financial accounting of Dixie. Given the events leading up to the meeting, it is unlikely that the parties intended for the operating agreement to require a final accounting after dissolution, at which point the assets would be distributed. The more logical reading is that the provision was meant to provide Mallon and Storen with assurances that they were receiving their fair share of the assets.

Further, I respectfully disagree with the majority that Mallon waived his right to an accounting. As defined by *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime,* 307 S.C. 339, 344, 415 S.E.2d 384, 387–88 (1992), a waiver is a voluntary and intentional abandonment or relinquishment of a known right.

The majority finds that Mallon waived his right to an accounting by failing to independently resolve the matter when he and Coker both had access to the bank records. I respectfully disagree. Dixie Holdings' operating agreement does not list each Member's role within the limited liability company. Each member; however, carried out specific duties: Coker performed accounting and financial related services, Storen acted as the real estate agent, and Mallon renovated the properties. Mallon was also a cosignatory on the first Dixie Developers bank account and equally capable of acquiring the bank records. Having access to the bank records is not the equivalent of an accounting. In order to complete a formal accounting necessary for the dissolution of a company, one must have access to all financial documents such as the company's income statements and balance sheets. Since Mallon did not have access to all documents necessary to compete a full accounting he could not have waived this right. Moreover, there is no evidence of a voluntary and intentional relinquishment of Mallon's contractual statutory rights.

Both HCH and Mallon in their pleadings requested a full accounting. In his answer, Mallon asserted "an accounting is appropriate for both parties, and that Coker, who acted as the financial officer of Dixie [Holdings] has repeatedly and improperly failed to prepare a proper accounting, which should now be done." Therefore, there is no evidence that Mallon voluntarily and intentionally abandoned his right to an accounting.

In conclusion, I am in agreement with the Court of Appeals holding that this case should be remanded for a full accounting of the LLC, and the proceeds from the sale of 15 Felix Street should be held in an escrow account, in accordance with the operating agreement, for the benefit of Dixie Holdings until a final accounting is performed and the appropriate amounts distributed accordingly.

For the reasons stated above, the Court of Appeals decision should be affirmed in part, reversed in part, and the matter remanded to the master for a full accounting.