# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Fine Housing, Inc., Appellant,

v.

William H. Sloan, Jr., Respondent.

Appellate Case No. 2017-002517

Appeal From Dorchester County
Carmen T. Mullen, Circuit Court Judge

Opinion No. 5761
Heard June 16, 2020 – Filed August 19, 2020

### AFFIRMED AS MODIFIED

Charles S. Altman, of The Law Offices of Charles S. Altman, and Meredith L. Coker, both of Charleston; and Patrick John Norton, of Chicago, Illinois, for Appellant.

Stephanie Holmes Burton, of Gibbes Burton, LLC, of Spartanburg, for Respondent.

**LOCKEMY, C.J.:** In this legal malpractice action, Fine Housing, Inc. (Fine Housing) appeals the circuit court's order granting William Sloan, Jr.'s motion to disqualify Fine Housing's counsel, Charles Altman, as a necessary witness. We affirm as modified.

## FACTS/PROCEDURAL HISTORY

This action arose from Fine Housing's purchase of two parcels of land, the Sol Legare Avenue and Pittsburg Avenue properties (collectively, the Properties), from Robin Robinson and RRJR, LLC (collectively, Robinson). In November 2013, Robinson sought to sell the Properties to satisfy its debts. William Swope represented Robinson during the sale of the Properties and contacted Sloan to conduct the closings. Prior to the closings, the Sol Legare property was scheduled for a foreclosure sale. In order to avoid the sale, the closings were expedited. Fine Housing requested the mortgagee postpone the foreclosure sale so that it could have more time for the closing; however, Altman, who represented the mortgagee, denied that request.

On December 2, 2013, Fine Housing closed on both properties in a single transaction for a total purchase price of $850,000. As part of the agreement, Fine Housing granted Robinson a lease on the Properties with the option to repurchase within two years. After the closing, Sloan discovered state and federal tax liens on the Properties in the name of John Robinson, Robinson's deceased husband. Additionally, Sloan was informed that Barry Clarke claimed he had a lease on the Pittsburgh property and a right of first refusal. Further, Chandler Crabtree and William Foster brought suit against Fine Housing based on the Statute of Elizabeth. It is alleged that Sloan relied on Swope's title search and failed to identify these existing tax liens, lawsuits, or leases on the Properties before the expedited closing. Thereafter, Robinson defaulted on the lease and sued Fine Housing. Robinson alleged it had not sold the property to Fine Housing but Fine Housing had instead loaned it $850,000 with the Properties as collateral.

Altman represented Fine Housing in the Clarke, Crabtree, and Foster litigations and during their tax lien actions. Altman settled Robinson's actions against Fine Housing, and that settlement established Fine Housing owned both properties. Altman then negotiated settlements with Crabtree and Foster for $100,000. Subsequently, Clarke offered to purchase the Pittsburgh property for $650,000, which Fine Housing rejected. The Clarke action went to trial, and the trial court found in favor of Clarke.

As to the tax liens, Sloan explained he was uncertain whether the tax liens applied to the Properties. Sloan and Altman disagreed as to what actions to take regarding the payment of the tax liens. Altman eventually negotiated a settled payoff of the tax liens on the Properties, which Fine Housing paid on behalf of Robinson.

Altman, on behalf of Fine Housing, brought a legal malpractice suit against Sloan. In its complaint, Fine Housing alleged Sloan failed to identify the tax liens on the

Properties, which required Altman to negotiate and obtain payoffs for the tax liens. Fine Housing also alleged Sloan failed to discover that the Properties were subject to the Clarke lease and the Crabtree and Foster lawsuits and failed to issue the title policies correctly.

In his answer, Sloan denied Altman was required to negotiate tax lien payoffs for the Properties. Sloan alleged Fine Housing failed to mitigate damages, suffered damages due to its own negligence, and its damages were caused by the intervening and superseding acts of others. On June 9, 2016, Sloan submitted his first set of answers to interrogatories, naming Altman as a witness.

Vince Destaso, Fine Housing's representative pursuant to Rule 30(b)(6), SCRCP, was deposed in connection to this suit. Destaso displayed a lack of knowledge related to the tax liens on the Properties. Specifically, Destaso stated he was unaware of the amount of the tax liens, unsure about the power of attorney to handle these liens, and unclear about whether the tax liens were settled. Additionally, Destaso was unsure about the exact amount of the Crabtree and Foster settlements, the date of the settlements, or why Fine Housing took a $50,000 insurance loss.

During Sloan's deposition, Altman asked Sloan about the actions Altman took and the conversations he had with Sloan regarding the tax liens. The following exchanges occurred:

> [Altman]: And didn't I also obtain a compromised settlement with the South Carolina Department of Revenue?
>
> [Sloan]: Yes.
>
> [Altman]: Didn't we have some discussion about whether or not the—if the tax liens expired by their terms after the closing, whether or not the money . . . should have been paid over to Ms. Robinson . . . ?

The questioning continued:

> [Altman]: And I believe I told you on behalf of Fine Housing you could not release the money to Ms. Robinson; is that correct?

[Sloan]: I don't remember that specifically, but that sounds correct.

[Altman]: And I did it based on this opinion, correct?

Sloan moved to disqualify Altman as counsel, arguing Altman was a necessary witness in Fine Housing's suit against Sloan. Specifically, Sloan asserted Altman was a necessary fact witness as to the following:

[(1)] The urgency of the payoff of the . . . mortgage and [the] refusal to postpone the foreclosure sale, leading to a rushed closing; [(2)] Obtaining payoffs for tax liens associated with both parcels of property, including attempts to deal with the seller's counsel regarding payoffs; [(3)] Assertions by Mr. Altman concerning which liens had to be paid and a subsequent negotiation of a payoff of a state tax lien; [(4)] Discussion and negotiations relating to the title insurance commitments and title policy; [(5)] The settlement of the action brought by [Robinson], since Mr. Destaso . . . testified . . . he did not read the settlement agreement and was not familiar with its terms, but claim[ed] amounts paid in settlement as damages in this case; . . . [(6)] The settlements . . . entered into with the current tenant of the Pittsburg Avenue property; [(7)] The settlement of the prior Foster and Crabtree actions; and [(8)] The nature of legal services provided . . . for which Fine Housing . . . [wa]s seeking damages.

Fine Housing argued the matters were uncontested and disqualification would cause substantial hardship to Fine Housing.

At the hearing on the motion to disqualify Altman, Sloan also asserted Altman was the only one who could explain the tax liens and whether the Crabtree and Foster settlements were fair and reasonable. Lastly, he asserted Altman was a necessary witness as to the mitigation of damages based on Clarke's offers to buy the Properties.

The circuit court granted Sloan's motion to disqualify Altman. The court held Altman was a necessary witness because he was the only witness who could testify as to the reason Fine Housing settled the Foster and Crabtree actions, the conversations with Sloan about title insurance, and the discharge of the tax liens. In addition, the circuit court held Altman's testimony was necessary to explain (1) which tax liens applied to the Properties, (2) why he advised Fine Housing to pay the tax lien that was in John Robinson's name, (3) the settlement with Robinson, and (4) his negotiations with the South Carolina Department of Revenue about the tax lien. The circuit court found Destaso's deposition demonstrated he was unable to provide accurate testimony regarding these issues. The circuit court also found Altman was a necessary witness regarding Fine Housing's damages from title insurance, settlements, and mitigation.

The circuit court found Altman's dual role would confuse and mislead the jury. The court concluded disqualification would not work substantial hardship or surprise on Fine Housing because Sloan identified Altman as a witness in his answers to interrogatories. The circuit court granted "Sloan's motion to disqualify . . . Altman as counsel for [Fine Housing]," but did not "preclude another attorney from . . . Altman's firm [from] representing Plaintiff at the trial of this case." Fine Housing filed a motion to reconsider, which the circuit court denied. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err by finding Altman was a "necessary witness"?

2. Did the circuit court err by failing to apply the exceptions explicit in Rule 3.7, RPC, Rule 407, SCACR, in its analysis?

3. Did the circuit court err by disqualifying Altman from all representation of Fine Housing?

## STANDARD OF REVIEW

"A circuit court's ruling on a motion to disqualify a party's attorney is reviewed for an abuse of discretion." *Brooks v. S.C. Comm'n on Indigent Def.*, 419 S.C. 319, 324, 797 S.E.2d 402, 404 (Ct. App. 2017). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support." *Historic Charleston Holdings, LLC v. Mallon*, 381 S.C. 417, 434, 673 S.E.2d 448, 457 (2009).

**LAW/ANALYSIS**

**I.  Necessary Witness**

Fine Housing argues the circuit court erred in finding Altman was a necessary witness.  Fine Housing argues several of the issues in dispute were matters of public record and could be found in the documents related to this case or through other witnesses.  We disagree.

Rule 3.7 of the South Carolina Rules of Professional Conduct, Rule 407, SCACR states,

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Comment 2 of Rule 3.7 states, "The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness."

"[A]n attorney is 'likely to be a necessary witness' when the 'attorney's testimony is relevant to disputed, material questions of fact' and 'there is no other evidence available to prove those facts.'"  *Brooks*, 419 S.C. at 326, 797 S.E.2d at 405 (quoting *Clough v. Richelo*, 616 S.E.2d 888, 891-92 (Ga. Ct. App. 2005)).  The attorney need not be "the only witness to these events"; instead, an attorney can be disqualified under Rule 3.7 if "no other witness would be able to provide evidence regarding the full [circumstances]" and other "material information."  *Id.* at 327, 797 S.E.2d at 406.

"A claimant in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach."  *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 525, 787 S.E.2d 485, 489 (2016).

We find the circuit court did not abuse its discretion by disqualifying Altman because the record supports the circuit court's conclusion he was a necessary

witness. *See Brooks*, 419 S.C. at 324, 797 S.E.2d at 404 ("A circuit court's ruling on a motion to disqualify a party's attorney is reviewed for an abuse of discretion."). On appeal, Fine Housing does not dispute that Altman's testimony was material to the litigated issues; instead, Fine Housing argues other evidence or witnesses were available to prove the facts Altman could provide. *See id.* at 326, 797 S.E.2d at 405 ("[A]n attorney is 'likely to be a necessary witness' when the 'attorney's testimony is relevant to disputed, material questions of fact' and 'there is no other evidence available to prove those facts.'" (quoting *Clough*, 616 S.E.2d at 891-92)).

Fine Housing alleges Sloan caused it to incur damages relating to the settlement of the Crabtree and Foster actions. However, Destaso's deposition indicates he was unable to testify about the details of the settlements or the exact amount of damages incurred by Fine Housing. Specifically, he stated he was unsure of the date or the total amount of the settlement and was unable to explain why there was a loss of insurance coverage. Although Destaso was never specifically asked about the reasonableness or necessity of the settlements, he showed he lacked the knowledge necessary to testify regarding the settlements. Destaso's failure to explain the details of the Crabtree and Foster settlements was evidence that Altman was a necessary witness. Altman knew the details of these actions, why Fine Housing settled them, what damages stemmed from the settlements, and whether those damages were proximately caused by Sloan's negligence. Without Altman's testimony, Sloan's ability to contest whether the damages were the result of a superseding cause or whether the settlements were reasonable would prove difficult.

The record shows Altman also had significant knowledge relating to Robinson's tax liens. Sloan disputes whether Fine Housing was required to pay the tax liens against the property. Fine Housing asserts that representatives of the South Carolina Department of Revenue and Internal Revenue Service can be called as witnesses to explain the tax liens; however, Altman has additional knowledge to explain why the parties believed Robinson's tax liens should have been settled and is privy to conversations with Sloan regarding the settlement of the tax liens. Thus, evidence supports the circuit court's conclusion that Altman's testimony would provide the trier of fact with the full circumstances regarding the tax liens at issue.

Moreover, Altman's deposition showed his questioning has the propensity to confuse the jury. When Altman questioned Sloan, he frequently crossed the lines between advocate and witness by stating his actions regarding the facts of this

case.  Questioning that draws attention to the attorney's actions would confuse the jury and blur the line between advocate and witness.  *See* Rule 3.7, cmt. 2, RPC, Rule 407, SCACR ("The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness.").  Based on the foregoing, we find the record supports the circuit court's conclusion Altman was a necessary witness.

## II. Rule 3.7 Exceptions

Fine Housing argues the circuit court erred in failing to apply the exceptions to Rule 3.7.  Fine Housing asserts the testimony Sloan seeks from Altman relates to the nature and value of legal services rendered and the disqualification of Altman would cause substantial hardship to Fine Housing.  We disagree.

Comment 3 of Rule 3.7 explains, "Paragraph (a)(2) recognizes that whe[n] the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue."  Comment 4 of Rule 3.7 states, "It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness."

"The substantial hardship exception to Rule 3.7 is construed narrowly.  Accordingly, the 'expense and possible delay inherent in any disqualification of counsel,' without more, do not qualify as substantial hardship."  *Brown v. Daniel*, 180 F.R.D. 298, 302 (D.S.C. 1998) (quoting *Estate of Andrews v. United States*, 804 F.Supp. 820, 829 (E.D. Va. 1992)).  "To find 'substantial hardship,' courts have required something beyond the normal incidents of changing counsel, such as the loss of extensive knowledge of a case based upon a long-term relationship between the client and counsel and substantial discovery conducted in the actual litigation."  *Id.*

Fine Housing asserts the circuit court erred by considering Altman's potential testimony as to the nature and value of legal services in "prior matters" because this violated the exception in Rule 3.7(a)(2).  However, Rule 3.7(a)(2) provides an exception only for legal services rendered in the case at the bar, not in prior matters.  *See* Rule 3.7(a)(2) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . the testimony relates to the nature and value of legal services rendered in *the* case . . . ." (emphasis added)); Rule 3.7, cmt. 3 ("Paragraph (a)(2) recognizes that whe[n] the testimony concerns the extent and value of legal services rendered *in the action in which the testimony*

*is offered*, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue." (emphasis added)). Thus, the circuit court did not err by considering Altman's potential testimony as to prior matters because Rule 3.7(a)(2) applies to legal fees in the case at the bar, not to legal fees asserted as damages from a previous case.

Further, the circuit court did not abuse its discretion by finding Altman's disqualification would not cause substantial hardship to Fine Housing. Here, the record contains no evidence Fine Housing would suffer any additional hardship beyond the normal expense and delay a litigant would experience with a change of counsel. The record does not show that Altman maintained a long-standing attorney-client relationship with Fine Housing because Altman only began representing Fine Housing after the closing that prompted this litigation. Moreover, Fine Housing's ability to continue to be represented by Altman's firm mitigates its hardship. Based on the foregoing, we find the circuit court did not err in its application of the exceptions found in Rule 3.7.

## III. Scope of Disqualification

Fine Housing argues the circuit court abused its discretion by disqualifying Altman from all representation because Rule 3.7 applies only to trial advocacy. We agree.

As an initial matter, the circuit court order did not expressly prohibit Altman from representing Fine Housing on other matters. However, it did not expressly outline any limits on the disqualification, and both parties assert the disqualification was complete. Therefore, we address whether Rule 3.7 disqualifies Altman from all representation. We hold it does not.

"A lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness . . . ." Rule 3.7, RPC, Rule 407, SCACR (emphasis added). The comments to Rule 3.7 describe the rationale behind the advocate-witness rule. Comment 1 explains, "Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." The prevailing justification for disqualifying counsel as a necessary witness is to prevent jury confusion. *See* Rule 3.7, cmt. 2 ("The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness.").

If Altman is no longer an advocate at trial, the propensity for jury confusion is greatly diminished. As other jurisdictions that have identical rules to our Rule 3.7

have held, we hold that Rule 3.7 does not prohibit an attorney from representing the client in other roles outside of trial advocacy. *See Culebras Enters. Corp. v. Rivera-Rios*, 846 F.2d 94, 101 (1st Cir. 1988) (providing attorneys who were disqualified and conducted pretrial activities did not violate Rule 3.7 because the rule prohibits "a lawyer-witness only from acting as [an] 'advocate at a trial'"); *Smaland Beach Ass'n, Inc. v. Genova*, 959 N.E.2d 955, 967 (Mass. 2012) (providing disqualification from Rule 3.7 only disqualifies an attorney as to the trial of the case and a disqualification on pretrial matters must derive from a source other than Rule 3.7); *see also* ABA Comm'n on Ethics & Prof'l Responsibility, Informal Op. 1529 (1989) ("The Committee construes the prohibition in Model Rule 3.7(b) against a lawyer-witness acting as 'advocate at a trial' as forbidding active participation as a trial lawyer, including presenting evidence and argument, and not as prohibiting assistance to the lawyer who serves as the active trial advocate . . . ."); *id.* ("A lawyer who anticipates testifying as a witness on a contested issue at a trial may represent a party in discovery and other pre-trial proceedings . . . ."). Because Rule 3.7 does not require Altman to be disqualified from all representation and to do so would exacerbate the hardship to Fine Housing, to the extent the order did so, we modify the order to clarify Altman is only disqualified from representing Fine Housing at the trial of this case.

**CONCLUSION**

Based on the foregoing, the circuit court's order is

**AFFIRMED AS MODIFIED.**

**GEATHERS and HEWITT, JJ., concur.**